**Guiseppe CASTORINA,
Plaintiff-Appellant,**

v.

**LYKES BROTHERS STEAMSHIP CO.,
INC., Defendant-Appellee.**

No. 84–2047.

United States Court of Appeals,
Fifth Circuit.

April 15, 1985.

Mandell & Wright, Stephen M. Vaughan, Houston, Tex., for plaintiff-appellant.

Stephen C. Embry, Cynthia L. Fausold, Groton, Conn., for amicus-Ass'n of Trial Lawyers of America.

Royston, Rayzor, Vickery & Williams, James R. Watkins, Ben L. Reynolds, Galveston, Tex., Howard R. King, Houston, Tex., for defendant-appellee.

Before CLARK, Chief Judge, and WISDOM and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

This appeal from a final judgment against a longshoreman who brought suit under the Longshoremen & Harbor Workers Compensation Act, 33 U.S.C. § 905(b), to recover damages from an allegedly negligent shipowner raises two important questions of interpretation of that Act. The plaintiff was exposed to asbestos dust while offloading asbestos from the defendant's vessels, and later contracted asbestosis. The defendant owned the vessels on which the asbestos was carried and conducted its own stevedoring operations. First, this court must decide whether the date of the plaintiff's last exposure to the asbestos or the date of manifestation of the disease is the relevant date of injury for determining what remedies are afforded the plaintiff by the LHWCA. Second, this court must determine the standard of care imposed by the LHWCA upon a shipowner-stevedore for actions undertaken solely in its capacity as shipowner. The district court, sitting in admiralty, found that the plaintiff was not entitled to recover, for the reason that the applicable provisions of the LHWCA were those in effect in 1979, when the plaintiff's disease first manifested itself; that the defendant did not, therefore, owe the plaintiff a warranty of seaworthiness of the vessel; and that the defendant

shipowner had not been negligent in the stowage or carriage of the asbestos. We affirm.

I.

The plaintiff, Guiseppe Castorina, was employed as a longshoreman in the port of Galveston, Texas, since 1955. Castorina was exposed to large amounts of asbestos dust on numerous occasions between 1965 and 1972 while offloading burlap bags containing raw asbestos from ships owned by several shipping lines including the defendant, Lykes Bros. Steamship Co., Inc. (Lykes).

The district court concluded from the evidence presented at trial that Castorina worked on Lykes vessels discharging asbestos approximately fifteen times between 1965 and 1972. Castorina and other longshoremen who worked at the Port of Galveston testified at trial that the asbestos carried on the Lykes vessels was shipped in loose-weave burlap bags and was stowed in the closed holds of the ships. The bags were often torn open during shipment and during the offloading process, and longshoremen handling the asbestos cargo were exposed to and inhaled large amounts of raw asbestos dust. The workers testified that the stevedores responsible for unloading this cargo did not provide masks or respirators to the workers, nor did the workers wear their own protective masks when working with asbestos cargo.

Castorina was last exposed to asbestos dust on a Lykes vessel in May 1972. In the spring of 1975, Castorina consulted a physician, complaining of wheezing in the left side of his chest and of respiratory discomfort. Chest x-rays taken at that time revealed a dense infiltrate in the left anterior aspect of the right middle lobe; later x-rays, taken in October 1976, showed further manifestations of asbestosis. In 1979, Castorina was diagnosed as suffering from asbestosis.[1]

---

**1.** The record testimony and plaintiff's medical history show that the plaintiff smoked two to three packs of cigarettes a day for 26 years. Castorina stopped smoking in 1969. The trial

On October 9, 1980, Castorina brought suit against Lykes and against Hellenic Lines, seeking recovery under the LHWCA and under general maritime law for injuries sustained as a result of his exposure to raw asbestos while working aboard the defendants' vessels. By amended complaints filed on February 2, 1982 and June 21, 1982, Castorina added numerous other shipowners as party defendants. Lykes and other named defendants also filed third party complaints against various shipping and stevedoring companies. All of the direct defendants, except Lykes, and all third parties in this action either have settled or have been dismissed from this suit. Our specific inquiry on appeal, therefore, is limited to the question whether Lykes, as shipowner, is liable to Castorina under the LHWCA or under general maritime law.

At trial, Castorina contended that Lykes, as shipowner, owed to him under the LHWCA both a duty to exercise due care and a warranty of seaworthiness of the Lykes vessels on which he worked. Castorina further alleged that Lykes breached its warranty of seaworthiness by shipping raw asbestos in bags that allowed the asbestos dust to escape, and by allowing the dust to accumulate in the holds of Lykes's ships. Castorina contended that Lykes knew or should have known of the danger to longshoremen presented by the asbestos dust and that Lykes negligently failed to protect Castorina from the hazards of asbestos exposure to which he was subjected while working aboard Lykes's vessels. Lykes argued at trial that Castorina's cause of action against Lykes did not accrue until the asbestosis manifested itself—sometime between 1975 and 1979. Lykes argued that the LHWCA as amended in 1972, which abolished the longshoreman's seaworthiness remedy against a shipowner, was applicable and that Lykes was not negligent in its handling of the asbestos cargo. It therefore urged the district court to hold that Lykes was not liable to the plaintiff for any injury.

The trial court found that the law applicable to the suit was that in effect on the date Castorina was diagnosed as having asbestosis and that Lykes, therefore, owed no warranty of seaworthiness to the plaintiff. The court found in the alternative that the Lykes vessels were not unseaworthy and that Lykes was not negligent in its handling of the cargoes of asbestos. Accordingly, the district court entered judgment for the defendant dismissing Castorina's claims with prejudice.

We agree with the district court's conclusion that the LHWCA as amended in 1972 is applicable to the instant suit and that Castorina does not, therefore, have an unseaworthiness claim against Lykes. We therefore find it unnecessary to address the question whether the Lykes vessels on which the plaintiff worked were seaworthy. We also concur with the district court's finding that Lykes was not negligent in failing to protect Castorina from the hazards of asbestos exposure on Lykes's vessels. We therefore affirm the district court judgment.

⸱

## II.

Our first inquiry on appeal is whether the law applicable to Castorina's cause of action is the warranty of seaworthiness under the pre-1972 LHWCA or section 905(b) of the LHWCA as amended in 1972. Castorina, who filed suit under the LHWCA and under general maritime law, asserts that pre-1972 substantive law governs his claims because his exposures to the asbestos dust all occurred before the effective date of the 1972 amendments to the LHWCA. The defendant argues that the controlling date for determining the applicable law for all purposes is not the date of last exposure to the asbestos but the date the asbestosis manifested itself. The district court held that in cases of occupational diseases with long latency periods, the applicable law under the

court found that the totality of plaintiff's medical history showed that his respiratory problems were caused by asbestosis, which the plaintiff

contracted as a result of his repeated exposure to and inhalation of asbestos dust. This finding is not disputed on appeal.

LHWCA is that in effect when the plaintiff is diagnosed as having the disease. Castorina was diagnosed as having asbestosis in 1979. The district court found, therefore, that the LHWCA as amended in 1972 applied to Castorina's claims. We agree.

The 1972 amendments to the LHWCA significantly restricted an injured longshoreman's potential claims against vessel owners. Before the 1972 LHWCA took effect, an injured longshoreman who performed work customarily performed by a seaman had an action against the vessel owner for damages based on the unseaworthiness of the vessel. *Seas Shipping Co. v. Sieracki,* 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. A *"Sieracki* seaman" could recover damages from the vessel owner for breach of its warranty of seaworthiness and could receive worker's compensation payments from his employer, the stevedore, even when the vessel owner was also the longshoreman's stevedore-employer. *Reed v. The Yaka,* 1963, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448. In cases in which the unseaworthy condition of the vessel was caused by an independent stevedore's breach of its implied warranty of workmanlike performance to the vessel, the vessel owner was entitled to seek full indemnity from the stevedore for any payment the shipowner was obligated to pay to the injured longshoreman. *Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp.,* 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. As a result, an independent stevedore was potentially liable to the injured longshoreman for compensation and to the ship-owner for indemnity, despite the provisions of section 905 of the Act, which limited an employer's liability to compensation payments.

In 1972, Congress amended the Act, replacing this "patchwork of overlapping statutory and general maritime remedies" with a "comprehensive remedial scheme between the covered worker, the vessel and the employer stevedore". *Castorina v. Lykes Bros. Steamship Co.,* S.D.Tex.1984, 578 F.Supp. 1153, 1160–61. "The 1972 amendment increased the rate of compensation; provided workers covered by the Act with a negligence action against the vessel, expressly abrogating the warranty of seaworthiness; and abolished the judicially created indemnity cycle between the vessel and the stevedore".[2] *Id.* at 1160 (citations omitted).

Under the LHWCA, the date of injury is used to determine whether pre-1972 or post-1972 law applies to a longshoreman's compensation claims and to third party actions brought under the Act. Before the district court rendered its opinion in the instant case, no court had defined the relevant "date of injury" in third-party long-latency occupational disease cases. In cases involving traumatic injury, the effects of which are most often felt within a short period of time, the date of injury for determining the applicable law under the LHWCA is the date the trauma actually occurred. *See, e.g., Martinez v. Dixie Carriers, Inc.,* 5 Cir.1976, 529 F.2d 457, 460 n. 1; *McCawley v. Ozeanosun Compania, Maritime, S.A.,* 5 Cir.1974, 505 F.2d 26, 28.

**2.** 33 U.S.C. § 905(b), added to the LHWCA by the 1972 Amendments, provides:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

33 U.S.C. § 905(b) (1982) (emphasis added).

In cases involving occupational diseases that do not immediately result in disability or death, however, it is unclear whether the injury "occurs" when the worker is exposed to the toxic substance (the "time of last exposure" theory) or when the disease actually manifests itself (the "date of manifestation" theory). *See generally Todd Shipyards Corp. v. Black*, 9 Cir.1983, 717 F.2d 1280, 1288–89, *cert. denied,* —— U.S. ——, 104 S.Ct. 1910, 80 L.Ed.2d 459.

In *Harrison v. Flota Mercante Grancolombiana, S.A.*, 5 Cir.1978, 577 F.2d 968, the plaintiff longshoreman contracted pulmonary fibrosis and emphasema from inhaling a toxic liquid substance that had spilled from a container during stevedoring operations. Although the plaintiff's claims were heard after the effective date of the 1972 amendments to the LHWCA, the court held that pre-amendment law was applicable "because the operative facts giving rise to this suit occurred prior to the effective date of the 1972 amendment[s]". *Id.* at 973 n. 2. In *Harrison*, however, the injury manifested itself shortly after the plaintiff's exposure to the toxic chemical. This case is, therefore, more analogous to the *Martinez* and *McCawley* cases in which a traumatic injury resulted in immediate disability, and is distinguishable from cases involving occupational diseases with long latency periods.

The cases dealing with long-latency diseases such as asbestosis and silicosis have generally held that the date of injury is the date of manifestation of the disease. These cases, however, have typically dealt with determination of the date the statute of limitations begins to run or of the amount of compensation to which the injured worker is entitled. Several courts have held that the statute of limitations for asbestosis and silicosis cases does not begin to run until the disease manifests itself. *See, e.g. Urie v. Thompson*, 1949, 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282, which held that a plaintiff's cause of action for silicosis did not accrue until the plaintiff either knew or had reason to know of the disease; *see also Borel v. Fibreboard Paper Products Corp.*, 5 Cir.1973, 493 F.2d

1076, 1102, one of the first cases to recognize a plaintiff's claims against a manufacturer for asbestosis, which held that a plaintiff's cause of action for asbestosis did not accrue until the disease was discovered or in the exercise of reasonable diligence should have been discovered. More recently, the Ninth Circuit has held that "for the purposes of determining the proper rate of compensation, the time of injury under section 10 of the LHWCA is defined as the date when the occupational disease manifests itself through a loss of wage-earning capacity". *Todd Shipyards Corp. v. Black*, 717 F.2d at 1291. The *Black* court adopted the "time of manifestation" approach rather than the "date of last exposure" approach because it best accomplished the purpose of the LHWCA to compensate injured workers for loss of future earnings. *Id.*

Castorina contends on appeal that *Black* should be limited to its facts and should not be extended to preclude an unseaworthiness remedy for one who was exposed to a toxic agent before 1972 but whose disease did not manifest itself until after 1972. Application of the date of manifestation rule in the instant case, Castorina argues, would result in inequities because a longshoreman suffering traumatic injury before 1972 would be afforded a seaworthiness remedy whereas a longshoreman suffering exposure to toxic materials before 1972 would be afforded the same remedy only if the disease actually manifested itself before 1972. Castorina asserts, therefore, that this court should hold, in accordance with the general rule that doubts should be resolved in favor of the seaman, that the relevant date of injury for determination of procedural and remedial provisions of the LHWCA, such as the running of the limitations period and the proper compensation rate, is the date of manifestation of the injury, whereas the relevant date of injury for determination of the applicable substantive laws is the last date of exposure.

Lykes counter-argues that in cases of long-latency diseases, the longshoreman's

cause of action does not accrue until he is disabled by the manifestation of the disease; therefore, the date of manifestation should be considered the relevant date of injury for determining the applicable procedural and substantive law. The defendant further argues that an injured worker cannot avail himself of the full range of remedies, including increased compensation benefits, afforded by the post-1972 LHWCA without accepting the concomitant restraint on his ability to pursue other remedies expressly precluded by the amendments.

■ The district court's finding that post-1972 law applies in the instant case is in accord with the rationale behind the 1972 LHWCA amendments as construed by the circuit courts. As noted by the *Black* court, "[i]n cases of occupational diseases with long latency periods, the trend is clearly toward the application of the time of manifestation rule". 717 F.2d at 1290. Further, a worker who is exposed to asbestos or similar fibers does not always contract pulmonary disease. The date of injury, therefore, is most realistically defined as the date that the disease actually manifests itself. This analysis is in keeping with Judge Learned Hand's early decision in *Grain Handling Co. v. Sweeney*, 2 Cir., 102 F.2d 464, *cert. denied*, 1939, 308 U.S. 570, 60 S.Ct. 83, 84 L.Ed. 478: "The [LHWCA] is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself".

Further support for this conclusion is found in the 1984 amendments to the LHWCA, Pub.L. No. 98–426, 98 Stat. 1639 (1984). Section 28(g) of the amendments provides:

"(g) For the purpose of this section—
(1) in the case of an occupational disease which does not immediately result in a disability or death, an injury shall be deemed to arise on the date on which the employee or claimant becomes aware, or in the exercise of reasonable diligence or by reason of medical advice should have been aware, of the disease...."

Pub.L. No. 98–426, § 28(g)(1), 98 Stat. 1639, 1655. This provision does not relate directly to section 905(b) of the act; however, the legislative history of the amendments demonstrates that Congress expressly rejected the "time of last exposure" approach to determining the date of injury and recognized that it is the disability itself, not mere exposure to a toxic substance, that should trigger an injured worker's rights under the Act. *See* H.R.Rep. No. 98–570, Part I, 98th Cong.2nd Sess. 10, *reprinted in* 1984 U.S.Code Cong. & Ad.News 2734, 2743; H.C.R. No. 98–1027, 98th Cong.2nd Sess. 30, *reprinted in* 1984 U.S.Code Cong. & Ad.News 2771, 2779–2780. Although no such language appears in the 1972 amendments, it is clear that Congress has now adopted the "date of manifestation" approach to determining the date of injury under the Act found applicable by the district court in the instant case.

The district court's holding that Lykes did not owe Castorina a warranty of seaworthiness because Castorina's injury did not occur until after the 1972 amendments to the LHWCA is, therefore, consistent with the majority of judicial authority and with the most current exposition of congressional intent. We affirm that holding.

### III.

■ Having determined that the LHWCA as amended applies to Castorina's claims and that Lykes owed no warranty of seaworthiness to Castorina under the Act as amended, we must now decide whether Lykes is liable to Castorina under section 905(b) of the Act. Section 905(b) expressly provides that a longshoreman whose injury is caused by the negligence of a vessel may bring a third-party action for damages against the owner of the vessel. 33 U.S.C. § 905(b) (1982).[3] "[S]uch a separate action is authorized against the vessel even when there is no independent stevedore and the longshoreman is employed directly by the vessel owner." *Jones & Laughlin Steel Corporation v. Pfeifer*, 1983, 462 U.S. 523, 530, 103 S.Ct. 2541, 2547, 76 L.Ed.2d 768,

---

**3.** See note 2 and accompanying text.

779. *See also Smith v. M/V Captain Fred,* 5 Cir.1977, 546 F.2d 119. Under section 905(b), however, "a vessel owner acting as its own stevedore is liable only for negligence in its 'owner' capacity, not for negligence in its 'stevedore' capacity". *Pfeifer,* 462 U.S. at 531 n. 6, 103 S.Ct. at 2547 n. 6, 76 L.Ed.2d at 779 n. 6.

Section 905(b) eliminated a longshoreman's seaworthiness remedy against a vessel and replaced it with a negligence standard; however, it did not specify the particular acts or omissions of a vessel that would constitute negligence. The courts, therefore, were left to grapple with the question of the duty owed by the vessel owner to a longshoreman. In *Scindia Steam Navigation Co. v. De Los Santos,* 1981, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1, the Supreme Court set forth the basic principles governing a vessel owner's duty to a longshoreman employed by an independent stevedore. Before turning the ship over to the stevedore, the shipowner must "exercis[e] ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property". *Id.* 451 U.S. at 167, 101 S.Ct. at 1622. The vessel owner must warn the stevedore of any hazards with respect to the ship or its equipment of which the shipowner is aware or should by the exercise of reasonable care be aware which would not be obvious to or anticipated by a reasonably competent stevedore. *Id.*

Once the shipowner turns the vessel over to the stevedore and cargo operations begin, the shipowner may rely on the stevedore to discharge his duties in a workmanlike manner, avoiding exposing the longshoremen to unreasonable hazards, without supervision by the ship. *Id.* at 170, 101 S.Ct. at 1624. "[A]bsent contract provision, positive law, or custom to the contrary, ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the

confines of the cargo operations that are assigned to the stevedore". *Id.* at 172, 101 S.Ct. at 1624. The *Scindia* court recognized, however, that the shipowner may have a duty to intervene in cargo operations when it becomes aware of a dangerous condition and the stevedore's continued operations are so "obviously improvident" as to "present an unreasonable risk of harm to the longshoreman". *Id.* at 175–76, 101 S.Ct. at 1626–27.

■ The Fifth Circuit recently has clarified the precise nature of the shipowner's duty to intervene in cargo operations conducted by an independent stevedore:

"Once loading operations have begun, the vessel owner can be held liable for injuries to employees of the stevedore resulting from open and obvious dangers only in the event of actual knowledge of the danger *and* actual knowledge that he cannot rely on the stevedore to remedy the situation. He is not held to a duty to discover the condition or to anticipate its danger."

*Helaire v. Mobil Oil Company,* 5 Cir.1983, 709 F.2d 1031, 1038–39 (emphasis in the original). A shipowner employing an independent contractor to perform stevedoring operations may be held liable to a longshoreman injured during the stevedoring operations, therefore, only when the shipowner has *actual* knowledge both of the dangerous condition and of the stevedore's unreasonable conduct in dealing with the dangerous condition. *Id. See also Duplantis v. Zigler Shipyards, Inc.,* 5 Cir. 1982, 692 F.2d 372, 374; *Hill v. Texaco, Inc.,* 5 Cir.1982, 674 F.2d 447, 451.

This appeal, however, presents a question heretofore undecided by this court: what duty does a shipowner who conducts its own stevedoring operations have—as shipowner—to protect a longshoreman from unreasonably dangerous cargo operations? We can find no reason to impose on a shipowner a greater duty of care toward longshoremen because the shipowner conducts its own stevedoring operations. In adopting the 1972 amendments to the

LHWCA, Congress recognized the need for special provisions to deal with cases in which a longshoreman was employed directly by the vessel. The legislative history of the amendments clearly expresses Congress's intent that an injured longshoreman's remedy be the same whether he is employed directly by the vessel or by an independent stevedore:

> "[T]he bill provides in the case of a longshoreman who is employed directly by the vessel there will be no action for damages if the injury was caused by the negligence of persons engaged in performing longshoring services.... The Committee's intent is that the same principles should apply in determining liability of the vessel which employs its own longshoremen ... as apply when an independent contractor employs such persons."

H.R.Rep. No. 92–1441, 92d Cong., 2d Sess. 118, *reprinted in* 1972 U.S.Code Cong. & Ad.News 4698, 4705. As discussed in Section I of this opinion,[4] Congress also specifically abolished the judicially-imposed warranty of seaworthiness owed a longshoreman by the vessel and eliminated any indemnity action by a shipowner against a negligent stevedore, so that a stevedore's exclusive liability under the Act is for compensation payments to the longshoreman.[5]

■ This scheme of compensation requires us to separate the negligence of the shipowner and that of the stevedore, even when the shipowner performs its own stevedoring activities. A shipowner's duty is to provide the stevedore a safe ship and to correct any unreasonably dangerous situation that arises during cargo operations, if the owner is aware of the danger and knows that the stevedore has failed adequately to protect against the danger. *Scindia*, 451 U.S. at 167–70, 175–76, 101 S.Ct. at 1622–23, 1626–27; *Helaire*, 709 F.2d at 1038–39. Only if the shipowner breaches this duty can he be held liable in

tort under section 905(b) of the LHWCA. The shipowner is otherwise entitled to rely on the stevedore adequately to perform cargo operations and is under no obligation to discover that the stevedore is acting improvidently. *Scindia*, 451 U.S. at 170, 101 S.Ct. at 1623. The longshoreman has no tort remedy against a negligent employer; the employee's sole remedy against the employer is compensation. 33 U.S.C. §§ 904, 905(a).

■ This specific separation of duties and remedies, detailed in the Act, does not change simply because the shipowner directly employs its own stevedoring personnel. In this situation, the stevedore's knowledge of dangerous conditions that may have arisen during the cargo operations should not be imputed to the shipowner, nor should the shipowner be deemed to know that the stevedore's actions in dealing with such dangers are obviously improvident. To impute this knowledge to a shipowner-employer would be to hold it liable in tort for damages arising from its negligence as stevedore, and effectively to eliminate the exclusivity provisions of sections 905(a) & (b). This result is contrary to the language and purpose of the Act as amended. We therefore hold that the duty owed by a shipowner to a longshoreman under section 905(b) is that established by *Scindia* and its progeny; this duty is neither heightened nor diminished when the longshoreman is employed directly by the vessel.

■ With these principles in mind, we now turn to Castorina's specific allegations of negligence against Lykes. Castorina contends on this appeal that Lykes negligently breached its duty of reasonable care toward Castorina in several respects. First, Castorina contends that Lykes was negligent as shipowner in its method and manner of stowing the asbestos cargo that was delivered to its stevedoring arm for offloading. Second, Castorina contends

---

**4.** See text accompanying note 2.

**5.** Section 905(a) of the Act provides that "the liability of an employer prescribed in section 904 of this title [liability for compensation] shall be exclusive and in place of all other liability of such employer to the employee...." 33 U.S.C. § 905(a) (1982).

that Lykes is liable to Castorina because of the negligently conducted offloading operations carried out by its stevedoring arm. Third, Castorina contends that Lykes was negligent per se in failing to provide respirators to the longshoremen working the asbestos cargo and in allowing the longshoremen to work without respirators.

Castorina asserts that Lykes was negligent in stowing the asbestos cargo in the holds of its ships in loose-weave burlap bags which allowed the asbestos fibers to escape into the air. This practice, Castorina contends, was unreasonably dangerous because Lykes knew or in the exercise of ordinary care should have known that exposure to large amounts of asbestos dust could cause asbestosis and other lung diseases. The district court found that no evidence was presented at trial to support Castorina's allegation that Lykes knew or should have known between 1965 and 1972 of the danger that exposure to asbestos presented to longshoremen. The court concluded, therefore, that Lykes was not negligent; it had exercised ordinary care to make the vessel safe for stevedoring operations.

The district court's findings cannot be set aside unless clearly erroneous.[6] *Cheek v. Williams-McWilliams Co., Inc.,* 5 Cir. 1983, 697 F.2d 649, 652. Castorina argues that the evidence presented at trial, including the expert testimony of Dr. Hobson, a certified industrial hygienist, safety professional, and licensed engineer, established that Lykes should have known by 1965 that exposure to raw asbestos fibers created an unreasonable risk of harm to the longshoremen. Dr. Hobson testified that the disease of asbestosis was well recognized among research scientists by 1955. His testimony established that by 1935, published studies warned of the dangers to factory workers of continued exposure to high concentrations of asbestos dust. The first study dealing with shipyard workers, who had continued exposure to lower levels of asbestos dust, was published in 1946. This study reported a low incidence of asbestosis among the shipyard workers. Not until 1965 was a study published which warned of serious dangers to shipyard workers continuously exposed to lower levels of asbestos dust. The United States government promulgated no standards for the maximum allowable levels of exposure to asbestos dust until 1970–1971. Nor were there any restrictions or cautionary warnings concerning the carriage of asbestos listed in the Gulf and East Coast South African trade tarriffs, United States Coast Guard regulations, or Department of Transportation regulations.

In reviewing this evidence, the district court noted that the reports and studies referred to by Dr. Hobson were not widely circulated and dealt only with workers continuously exposed to asbestos dust. None of the reports or studies examined by Dr. Hobson dealt with intermittent exposures to bagged raw asbestos—exposures such as those to which Castorina was subjected. The court concluded that the evidence was insufficient to show that Lykes should have known in the years 1965 through 1972 of the dangers of asbestos exposure such as that suffered by Mr. Castorina. Upon a review of this record, we cannot say that we are left with the definite and firm conviction that a mistake has been committed. *United States v. U.S. Gypsum Co.,* 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. Accordingly, we uphold the district court's finding that Lykes did not know and should not have known of the dangers of asbestos from 1965 to 1972.

Because Lykes did not know that exposure to asbestos dust created a hazard to longshoremen, it cannot be found liable for

---

**6.** This rule applies both to the court's finding that Lykes did not know nor should it have known of the dangers of asbestos and to its finding that Lykes was not negligent in its stowage or handling of the asbestos cargo, provided that the court employed the correct legal standards as to Lykes's duty of care. Although it did not engage in an extended analysis of a shipowner's duty toward a longshoreman when the shipowner also acts as a stevedore, the court correctly applied the law as set forth in *Scindia* and the cases of this circuit. See *Castorina,* 578 F.Supp. at 1161. Accordingly, we are bound by the clearly erroneous standard.

stowing the cargo in a manner that allowed the asbestos fibers to escape. "The shipowner's liability for damages arising from a dangerous stow is limited to situations where the shipowner knew or should have known of the dangerous condition." *Harris v. Flota Mercante Grancolombiana, S.A.*, 5 Cir.1984, 730 F.2d 296, 299 (citation omitted). The district court correctly held, therefore, that Lykes was not negligent in its stowage of the asbestos cargo.

Similarly, Lykes cannot be held liable for permitting stevedoring operations to be conducted in a manner that allowed asbestos fibers to escape into the air. Once stevedoring operations had begun, Lykes was liable for any open and obviously dangerous conditions only if Lykes had knowledge of the danger and that the stevedore would not take adequate precautions to eliminate the danger. *Helaire*, 709 F.2d at 1038–39; *see* p. 1032. Because Lykes was not aware that the asbestos posed a danger to the longshoremen engaged in offloading the cargo, it cannot be held liable for failing to protect against these unknown dangers.

Nor can Lykes be found negligent for failing to provide respirators to the longshoremen working with the asbestos cargo. Title 29, section 1504.102(c)(1) of the Code of Federal Regulations, as amended in 1965, provides: "For protection against pneumoconiosis[7] producing dusts, a respirator equipped with the type of filter provided for such purpose shall be used." 29 C.F.R. § 1504.102(c)(1) (1965). Castorina contends that this regulation applies to Lykes as the shipowner; that Lykes violated this regulation; and that the violation proximately caused injury to Castorina, one of the intended beneficiaries of the regulation. Castorina concludes that this constituted negligence per se for which Lykes must be held liable in its capacity as shipowner.

This argument fails for several reasons. First, the regulation to which Castorina cites imposes a duty to provide respirators not on Lykes as shipowner but on Lykes as stevedore. Section 1504.2 of the regulations imposes the responsibility for compliance with the regulations on all "employers". An "employer" is defined as "an employer any of whose employees are employed, in whole or in part, in longshoring operations". *Id.* § 1504.3(c). Section 1504.2(b) provides that "[i]t is not the intent of [these] regulations ... to place additional responsibilities or duties on owners, operators, agents or masters of vessels unless such persons are acting as employers, nor is it the intent of these regulations to relieve such owners, operators, agents or masters from responsibilities or duties placed upon them by law, regulation or custom." The regulations themselves were promulgated by the Department of Labor under the authority granted it by the LHWCA as amended in 1958, and are designed to require employers to take all reasonable steps to prevent injury to its employees. These regulations should not be viewed, therefore, as placing an additional duty on Lykes as shipowner; rather, they apply to Lykes only in its capacity as an employer.[8]

7. Webster defines "pneumoconiosis" as a "[d]isease of the lungs caused by the habitual inhaling of minute mineral or metallic particles, as of coal dust in anthracosis, quartz dust in silicosis, etc". Webster's New International Dictionary 1899 (2d Ed.1958).

8. Castorina asserts that Lykes should be held liable for violation of the safety regulations under this circuit's decision in *Manning v. M/V Sea Road*, 5 Cir.1969, 417 F.2d 603. In *Manning*, a case decided before the 1972 amendments to the LHWCA were enacted, a longshoreman sued the vessel owner, who was also the plaintiff's stevedore-employer, for injuries suffered as a result of the unseaworthiness of the vessel. The plaintiff was injured when he stepped on a rotted manhole cover which collapsed, causing the plaintiff to fall into the hold of the vessel. The regulation in question provided that the stevedore must halt operations when manhole openings were unsecured. The court held that the regulation was binding on the vessel in the sense that it was binding on any employer of longshoring employees. The court then found that violation of the regulation made the vessel unseaworthy and that this unseaworthiness was a proximate cause of the injury; therefore, the court held the vessel liable to the plaintiff. The violation itself did not subject the shipowner to liability under a theory

Nor is Lykes liable as shipowner for failing to step in and halt stevedoring operations when it became aware that the longshoremen unloading the raw asbestos were not wearing respirators or other protective equipment. The plaintiff's witnesses testified at trial that the dusty conditions in the holds of the vessels carrying asbestos were open and obvious to the longshoremen and to the stevedoring crew when they commenced the offloading operations. At that point, Lykes as vessel owner was entitled to rely on Lykes as stevedore to conduct the offloading operations properly. Lykes knew of the dusty conditions and knew that the men were not wearing respirators.[9] Lykes did not know, however, that this condition was unreasonably hazardous. As shipowner, it had no statutory duty to provide respirators. Moreover, it was entitled to rely on its stevedoring arm to perform the cargo operations properly and had no duty to intervene in the cargo operations which it did not know to be improper. In no case, therefore, can Lykes be held negligent, because it did not know nor should it have known that exposure to asbestos created a hazard to the plaintiff. We therefore affirm the district court's holding that Lykes was not negligent in any manner under section 905(b).

## IV.

The district court correctly found for the defendant, Lykes, and properly dismissed Castorina's claims. Because Castorina's asbestosis did not manifest itself until 1979, the LHWCA as amended in 1972 is applicable to this suit. Under that Act as amended, a longshoreman has no unseaworthiness action against the vessel owner. Although a longshoreman may file suit for damages against a negligent shipowner under section 905(b) of the Act, he cannot recover in tort for any injury caused by the stevedoring crew. In cases such as the one before us, in which the injured worker is employed directly by the vessel owner, the worker may recover in tort from the vessel owner only for negligence of the vessel as vessel owner. Because Lykes neither knew nor should have known of the dangers of asbestos exposure, we find that its method of stowing the cargo was not negligent. Nor was Lykes, as shipowner, negligent in allowing Lykes, as stevedore, to conduct the cargo operations as it did. Accordingly, we AFFIRM the judgment of the district court.

---

of negligence per se; the shipowner was held liable for the unseaworthiness of the vessel, not for violation of the regulation.

**9.** The district court found that Lykes did provide respirators to the longshoremen. *Castorina,* 578 F.Supp. at 1161. We find no evidence in the record to support this finding. The evidence on the record before us compels us to find that the longshoremen working the asbestos cargoes were not provided with and did not wear masks or respirators when unloading as-

bestos. The district court's finding to the contrary is clearly erroneous. As demonstrated by our analysis above, however, this constitutes harmless error; Lykes was not bound by the regulation in its capacity as shipowner and was not negligent in failing to stop operations and to require the men to wear respirators because Lykes was under no duty to discover the dangers that asbestos exposure presented to longshoremen.