Daniel R. FEUGE

v.

TEXACO INC.

Civ. A. No. B–83–995–CA.

United States District Court,
E.D. Texas,
Beaumont Division.

April 29, 1986.

Gary Stephens, Houston, Tex., for plaintiff.

Michael C. Farrow, Clann, Bell & Murphy, Houston, Tex., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

COBB, District Judge.

CAME ON THIS the above styled cause, and the court, having considered the evidence presented and arguments of counsel, enters the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff, Daniel R. Feuge, brings this action pursuant to the third-party provisions of the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), specifically, 33 U.S.C. § 905(b), based upon

an incident occurring on September 30, 1980.

2. On the aforementioned date, Feuge was employed by Texaco Inc., as a dockman's helper within the Texaco Dock Department at the Texaco Marine Terminal in Port Arthur, Texas. As such, he was not attached to the crew of any vessel, but his responsibilities generally involved the loading and unloading of ships at the Terminal and related activities.

3. The manner in which the TEXACO MARYLAND was docked on September 30, 1980, was not unusual and did not present any unique problems as to the loading of the vessel.

4. Under the customs prevailing at the Texas Marine Terminal at Port Arthur, control of the hose attachment procedure rested solely with the Texaco Dock Department which assumed total responsibility for the loading operations on the vessel. No control over the attachment procedure rested with the vessel *or* her crew. Control over the procedure included, *inter alia,* the identity and number of men assigned to the task and the equipment to be used. No contract provision, positive law or custom to the contrary existed.

5. During the evening of September 30, 1980, the TEXACO MARYLAND was turned over to the Texaco Dock Department for the unloading of the cargo. The Texaco Dock Department assigned the task of hooking cargo hoses to the manifold of the TEXACO MARYLAND to Feuge and a co-worker. These hoses were the property of the Texaco Dock Department, as was the equipment (winches and booms) used to attach the hoses.

6. Because of the inadequacies of the equipment and personnel provided by the Texaco Dock Department, Feuge requested assistance from a mate aboard the TEXACO MARYLAND. The mate authorized the use of the ship's winch to assist in attaching the hose. The winch was unable to lift the hose.

7. No further assistance was requested by Feuge or offered by the ship's crew. The use of the ship's winch and withdrawal of aid by the ship's crew in no way worsened Feuge's position nor created a reliance by Feuge upon the assistance of the ship's crew or equipment.

8. In the course of attaching a hose, Feuge injured his back. The injury occurred because a winch and boom which normally would be used to lift a particular hose was inoperable and thus the hose had to be lifted manually. Also, an insufficient number of workers was assigned to the task. Finally, a hose adapter was not used which would have allowed the ship's winch to be utilized in the attachment of the hose. Each of these contributing factors were under the sole control of the Texaco Dock Department.

9. Feuge did not exhaust all avenues of assistance from the Texaco Dock Department in the form of a request for additional men or adequate equipment. Feuge was aware of these possibilities and that he was under no duty to continue the loading without such assistance.

10. The ship's crew was unaware that Feuge and his coworker would attempt to manually lift the hose without requesting more men or adequate equipment from the Texaco Dock Department.

11. Feuge's injury resulted from his own negligence and the negligence of the Texaco Dock Department. No act of Texaco Inc. in its role as shipowner constituted negligence which proximately caused Feuge's injury.

12. As a result of the injury sustained by Feuge, he was unable to work from October 1, 1980, through October 8, 1980, and from November 15, 1980, through December 1, 1980. Following his latter return, he worked for Texaco until January 13, 1983, when he resigned "for personal reasons," except for a period of time during which his union was on strike. His resignation resulted from his facing probable termination due to his being found asleep on the job.

13. Feuge sought medical treatment from Dr. M.J. Moore following his injury in

1980, and again following his leaving Texaco in 1983. No disc involvement was found in his back, and Dr. Moore's diagnosis has been from the inception one of acute lumbar strain.

14. Feuge sought and received LHWCA benefits from Texaco as his employer at the time of the injury. The Insurance Company of North America, as insurance carrier for Texaco, has intervened herein, seeking recovery by way of subrogation for those monies expended as compensation, attorneys' fees, and medical care.

15. Insofar as any Conclusions of Law, *infra,* may be construed as a Finding of Fact, it is hereby adopted as such.

## CONCLUSIONS OF LAW

1. As noted, Feuge brings this action pursuant to the LHWCA, specifically 33 U.S.C. § 905(b). That subsection authorizes an injured party covered by the LHWCA to bring an action against a vessel where the injury was "caused by the negligence of [the] vessel."

2. Feuge was engaged in longshoring operations at the time of his injury and, thus, was within the coverage of the LHWCA. *See* 33 U.S.C. §§ 902(3) and 903. Indeed, he has sought and received compensation benefits from Texaco as his employer pursuant to the LHWCA. Insofar as Texaco as that employer is concerned, specifically, the Dock Department of Texaco, this compensation liability is exclusive of all others as set forth in 33 U.S.C. § 905(a).

3. A longshoreman who is injured by the concurrent negligence of the stevedore and the shipowner may recover for the entire amount of his injuries from the ship, even though the stevedore's negligence greatly outweighs the negligence attributable to the shipowner. *Edmonds v. Compagnie General TransAtlantique,* 443 U.S. 256, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979).

4. Such a separate action is authorized against the vessel even when there is no independent stevedore and the longshoreman is employed directly by the vessel owner. Under Section 905(b), however, a vessel owner acting as its own stevedore is liable only for negligence in its "owner capacity, not for negligence in its "stevedore" capacity. *Jones & Laughlin Steel Corporation v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983); *Castorina v. Lykes Brothers Steamship Co., Inc.,* 758 F.2d 1025 (5th Cir.1985).

5. Once the stevedore's cargo operations have begun, absent contract provision, positive law or custom to the contrary, the shipowner has no general duty under Section 905(b) to supervise or inspect the cargo operations for dangerous conditions within the confines of the operations that are assigned to the stevedore. The shipowner is generally entitled to rely on the stevedore. *Scindia Steam Navigation Co. v. de los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981).

6. A shipowner's duty is to provide the stevedore a safe ship and to correct any unreasonably dangerous situation that arises during cargo operations, if the owner is aware of the danger *and knows that the stevedore has failed adequately to protect against the danger.* The shipowner is otherwise entitled to rely on the stevedore to adequately perform cargo operations and is under no obligation to discover that the stevedore is acting improvidently. *Castorina, supra.* (Emphasis added).

7. As each of the acts of negligence which lead to Feuge's injury were under the sole operational control and responsibility of the Texaco Dock Department, the longshoreman has no tort remedy against his negligent employer; the employee's sole remedy against the employer is compensation. *Castorina, supra.*

8. The fact that the shipowner offered assistance to the cargo operations did not require him to continue his services. The Good Samaritan is not required to continue his services indefinitely, or even until he has done everything in his power to aid

or protect the other. The actor may normally abandon his effort at any time unless, by giving the aid, he has put the other in a worse position than he was before the actor attempted to aid him. Comment to Section 323, RESTATEMENT (SECOND) OF TORTS (1965), which limitation to liability is incorporated into Section 324A by the Comment to Section 324A, RESTATEMENT (SECOND) OF TORTS (1965).

9. Under the facts which obtain in the instant case, there is no basis for any liability to Feuge on the part of Texaco and judgment for the defendant will be entered accordingly.

10. Insofar as any Findings of Fact, *supra,* may be construed as a Conclusion of Law, it is hereby adopted as such.