Ethylene **TILLMAN**, Widow of Alex Tillman, Deceased, Individually and as Representative of the Estate of Alex Tillman, et al., Plaintiffs,

v.

**LYKES BROS. STEAMSHIP CO., INC., Defendant.**

Civ. A. No. H–87–2665.

United States District Court,
S.D. Texas,
Houston Division.

Feb. 23, 1990.

Mark W. Long, Anderson, Kamel & Long, and Stephen Vaughan, Mandell & Wright, Houston, Tex., for plaintiffs.

Hubert Oxford III, Beaumont, Tex., for defendant.

## MEMORANDUM AND ORDER

LAKE, District Judge.

This case involves unseaworthiness and negligence claims brought by the survivors and estate of a deceased longshoreman against the shipowner for whom the longshoreman worked even though the longshoreman lost a similar case before he died.

### Facts and Procedural History

In 1982 Alex Tillman brought an unseaworthiness and negligence action against Lykes Bros. Steamship Co., Inc. in this Court for personal injuries from asbestos exposure. *Tillman v. Lykes Bros. S.S. Co., Inc.*, C.A. No. H–82–1091. Tillman alleged that during the course of his employment as a longshoreman with Lykes from 1950 until 1971 he was exposed to asbestos on a daily basis working around asbestos insulation on Lykes' vessels and unloading asbestos from Lykes' vessels. Tillman claimed that he suffered from asbestosis as a result of this exposure. His case was tried in 1984, and Judge Robert O'Conor found that Tillman "does not have

asbestosis" and that he "has not suffered an injury as a result of any negligence or unseaworthiness of the vessels of Defendant." A final, take-nothing, judgment was entered against Tillman on March 19, 1984. There was no appeal from the judgment.

On November 28, 1986, Alex Tillman died. On August 21, 1987, his widow, Ethylene Tillman, individually, and as representative of Alex Tillman's estate, brought the present action against Lykes for unseaworthiness and negligence. Her complaint was amended to add similar claims by Alex Tillman's three adult children. Plaintiffs seek to recover three types of damages allegedly arising from Alex Tillman's death from asbestosis:

(1) all plaintiffs seek damages because of the unseaworthiness of Lykes' vessels;

(2) the Estate of Alex Tillman seeks damages, by way of a survival action, for Alex Tillman's
   (a) physical pain,
   (b) mental anguish,
   (c) medical expenses necessarily incurred in the treatment of his injuries, and
   (d) lost earnings,
from the date of his injury until the date of his death; and

(3) all plaintiffs seek damages, by way of a maritime wrongful death action, for mental anguish, loss of society, loss of consortium, care, maintenance, support, services, advice, counsel, affection, solace, comfort, companionship and assistance, grief and bereavement.

Lykes moved for summary judgment asserting that (1) plaintiffs' action for unseaworthiness is precluded by the 1972 amendments to the Longshoreman and Harbor Worker's Compensation Act ("LHWCA"), (2) the survival action brought by the Estate of Alex Tillman is barred by the doctrine of *res judicata*, (3) plaintiffs' alleged damages for mental anguish, grief and bereavement are not compensable under the general maritime law, and (4) plaintiffs are collaterally estopped from bringing this action by virtue of the previous judgment in H–82–1091.

*Plaintiffs' Unseaworthiness Claim*

■ Before the 1972 amendments to the LHWCA, an injured longshoreman who performed work customarily performed by a seaman had a damage action against the owner of a vessel based on the unseaworthiness of the vessel. *Castorina v. Lykes Bros. S.S. Co., Inc.*, 758 F.2d 1025, 1029 (5th Cir.), *cert. denied*, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985), *citing Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). In 1972 the LHWCA was amended to provide that "[t]he liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred." 33 U.S.C. § 905(b). As a result of this amendment a longshoreman's unseaworthiness remedy against the vessel owner was abolished, and he was limited to bringing a negligence action against the vessel owner. The relevant date of injury for determining what remedies a plaintiff is afforded under the LHWCA is "the date that the disease actually manifests itself." *Castorina*, 758 F.2d at 1031. If the date of manifestation is after the 1972 amendments, no cause of action based upon unseaworthiness may be maintained by a longshoreman under the LHWCA.

■ Lykes argues that plaintiffs are barred from bringing their unseaworthiness claim because Tillman's disease did not manifest itself until after 1972. To support its argument Lykes cites the testimony of three physicians who testified in Alex Tillman's earlier case. Dr. Eric Comstock, a medical expert called by Tillman, testified by deposition that a diagnosis of asbestosis was either made or suspected in 1981, when Tillman was treated by another doctor for shortness of breath. (Docket Entry No. 35, Ex. E) At trial Dr. Comstock testified that he diagnosed Tillman's asbestos-related condition in February of 1983. Judge O'Conor's Memorandum and Order recounts the trial testimony of Drs. Stanley Crawford and Paul Stevens, who concluded that Tillman did not then have asbestosis. Dr. Crawford testified that he found no evidence of asbestosis in 1971

when he operated on Tillman's left lung to remove a bullous lesion. Dr. Stevens testified that Tillman's pleural thickening was caused by his 1961 and 1971 lung operations and by an infection in his left lung. Dr. Stevens testified that examination of a section of Tillman's lung removed in the 1971 operation revealed no asbestos fibers.

Plaintiffs argue that their unseaworthiness remedies are not precluded by *Castorina* because Alex Tillman's asbestosis manifested itself with symptoms before 1972 even though his injury was not diagnosed, or was not correctly diagnosed, until after 1972. This argument cannot withstand the holding in *Castorina*. Mr. Castorina was exposed to large amounts of asbestos dust on numerous occasions while offloading raw asbestos from vessels owned by Lykes and other shipping lines at the Port of Galveston from 1965 to May of 1972. In 1975 Castorina consulted a physician, complaining of wheezing in his chest and respiratory discomfort. Chest x-rays taken in 1975 and 1976 showed manifestations of asbestosis, and in 1979 Castorina was diagnosed with asbestosis. Castorina sued Lykes and other defendants in 1980 for breach of the warranty of seaworthiness under the LHWCA.

After a bench trial this Court held that the law applicable to Castorina's suit was that in effect on the date Castorina was diagnosed with asbestosis. Since Castorina was diagnosed with asbestosis in 1979, the court found that the post–1972 LHWCA applied to his unseaworthiness claim, and that Lykes therefore owed no warranty of seaworthiness to Castorina. The Fifth Circuit agreed. 758 F.2d at 1029. It held that the date of injury for purposes of the LHWCA was the date that the disease manifested itself with a disability.

[I]n cases of occupational diseases with long latency periods, the trend is clearly toward the application of the time of manifestation rule ... Further, a worker who is exposed to asbestos or similar fibers does not always contract pulmonary disease. The date of injury, therefore, is most realistically defined as the date that the disease actually manifests itself ... The LHWCA is not concerned with pathology, but with industrial disability; and a disease is no disease until it manifests itself.

758 F.2d at 1031. A careful reading of *Castorina* leads to the conclusion that the date of manifestation is the date the plaintiff became aware of the disease, or should have become aware of it in the exercise of reasonable diligence. 758 F.2d at 1030–1031.

In this case the summary judgment evidence establishes that Alex Tillman's disease did not manifest itself until after 1972. Although Tillman suffered emphysema and other lung problems in the early 1960's, there is no summary judgment evidence that he was diagnosed with asbestosis until 1981. Nor is there any summary judgment evidence that Alex Tillman or the present plaintiffs should have become aware of asbestosis by 1972. The first tentative diagnosis was in 1981. Ethylene Tillman admits in an affidavit filed in this case that although "Mr. Tillman began suffering breathing problems ... sometime in the 1960's.... We did not know that [Tillman's] breathing problems were caused by asbestos until after 1972." (Docket Entry No. 41, Ex. B) The fact that Alex Tillman did not file suit until 1982 also supports the conclusion that he did not suspect asbestosis until sometime in 1981.[1] Based on this summary judgment evidence the Court finds that Alex Tillman's alleged asbestosis did not manifest itself until after 1972, and that plaintiffs' cause of action for unseaworthiness is therefore governed by the post–1972 LHWCA. Accordingly, Lykes' motion for partial summary judgment on

---

1. Had Tillman suspected asbestosis before 1972 both he, in the earlier action, and his survivors and estate, in the present action, would have faced severe statute of limitations problems. *See, e.g., Fusco v. Johns–Manville Products Corp.,* 643 F.2d 1181 (5th Cir.1981). In apparent anticipation of a limitations defense, paragraph IV of Alex Tillman's Second Amended Original Complaint in H–82–1091 alleges that "if [Tillman] was suffering from any bodily disease or infirmity prior to this time, or during the years he was exposed to asbestos, that it was dormant and unknown to him and not causing him any difficulty, pain or disability, but if he had any such condition, it has been caused to become aggravated."

plaintiffs' unseaworthiness claim is GRANTED.

### *The Estate of Alex Tillman's Survival Action*

■ In her capacity as personal representative of the Estate of Alex Tillman, Ethylene Tillman seeks damages for Alex Tillman's physical pain, mental anguish, medical expenses, and lost earnings suffered from the date of his injury until the date of his death. Mrs. Tillman admits that this cause of action is "directly derived from claims owned by Mr. Tillman himself prior to his death." (Docket Entry No. 41, p. 6) Nevertheless, she argues that Lykes' motion for summary judgment on *res judicata* grounds should be denied because "the unique circumstances in this case [make] new evidence available to Mr. Tillman's estate that was inherently unavailable to Mr. Tillman." *Id.*

■ "Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). Survival actions are subject to the same *res judicata* consequences as other actions.

> Survival actions present the least difficulty. If the injured person pursued an action to judgment during his lifetime, the judgment has the same preclusion effects in a survival action as it would have in a second action by the injured person.

18 Wright, Miller & Cooper, *Federal Practice and Procedure*, § 4459, p. 527 (1981).[2]

To succeed on its *res judicata* argument, Lykes must establish four prerequisites. There must be (1) identity of the parties between the two suits (2) that involve the same claims (3) before a court of competent jurisdiction (4) that resulted in a final judgment on the merits. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 972 (5th Cir.1986).

After comparing H–82–1091 and the present survival action, the Court concludes that Lykes has satisfied these four prerequisites because:

(1) Alex Tillman was plaintiff there and his estate is plaintiff here;

(2) both actions involved the same claims; and

(3) and (4) a final judgment was entered against Alex Tillman by a court of competent jurisdiction on March 19, 1984.

Lykes' motion for partial summary judgment on the survival action of the Estate of Alex Tillman is therefore GRANTED.

### *Plaintiffs' Wrongful Death Claims for Mental Anguish, Grief and Bereavement*

■ Relying principally on the Supreme Court's decision in *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), Lykes argues that plaintiffs' wrongful death claims for mental anguish, grief and bereavement are not compensable under general maritime law as a matter of law. Plaintiffs respond that *Gaudet* is distinguishable because it involved a seaman, not a longshoreman. The Court disagrees with plaintiffs' reading of *Gaudet.*

*Gaudet* involved an action by the widow of a longshoreman, not a seaman. The Supreme Court held that mental anguish, grief and bereavement are not compensable damages in a maritime wrongful death action. 94 S.Ct. at 815, n. 17. Lykes' motion for partial summary judgment on these claims is therefore GRANTED.

### *Collateral Estoppel*

■ Lykes argues that all of plaintiffs' claims are barred by the doctrine of collateral estoppel. Since the Court has already granted summary judgment as to plaintiffs' unseaworthiness, survival, and maritime wrongful death actions for mental an-

---

**2.** *Restatement (Second) of Judgments* § 45(1) (1982) states:

> When a person has been injured by an act that later causes his death and during his lifetime brought an action based on that act:

> (1) If the action proceeded to judgment for or against the injured person before he died, his successor under a survival of claims statute is precluded by that judgment to the same extent as the injured person would have been.

guish, grief and bereavement, the Court need not address Lykes' collateral estoppel argument as it relates to those claims. The only claim remaining is plaintiffs' maritime wrongful death action for damages for loss of society, consortium, care, maintenance, support, services, advice, counsel, affection, solace, comfort, companionship and assistance.

Lykes contends that as a result of the prior litigation and judgment between it and Alex Tillman, plaintiffs are collaterally estopped from relitigating the same issues against it in this action. Lykes argues that even though the present plaintiffs were not parties to Alex Tillman's prior suit, their claims are nevertheless barred because Alex Tillman acted as the their virtual representative in the earlier suit. Plaintiffs respond that they are not collaterally estopped because the requisite mutuality of parties is lacking. They argue that virtual representation does not apply because the close family relationship between Alex Tillman and the plaintiffs is insufficient to bind plaintiffs, as non-parties, to the judgment against Alex Tillman.

■■■ Federal law determines the preclusive effect given a prior decision of a federal court regardless of the basis for the court's jurisdiction. *Aerojet–General Corp. v. Askew,* 511 F.2d 710, 716 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). Under the federal rules of issue preclusion a party is prevented from relitigating issues provided:

(1) that the issue at stake [is] identical to the one involved in the prior litigation;

(2) that the issue has been actually litigated in the prior litigation; and

(3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

*Terrell v. DeConna,* 877 F.2d 1267, 1270 (5th Cir.1989).

■■■ Issue preclusion does not require complete identity of parties in the two suits. In some instances a preclusion defense may be invoked by a party to the prior suit against a non-party. *Terrell,* 877

F.2d at 1270. In *Terrell* the Court announced the following general federal rule for asserting issue preclusion against a non-party to the prior suit:

First, a nonparty who has succeeded to a party's interest in property is bound by any prior judgments against that party.... Second, a nonparty who controlled the original suit will be bound by the resulting judgment.... Third, federal courts will bind a nonparty whose interests were represented adequately by a party in the original suit.

*Id., quoting Southwest Airlines Co. v. Texas Int'l Airlines, Inc.,* 546 F.2d 84, 95 (5th Cir.), *cert. denied,* 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977).

Plaintiffs in this case are not the successors-in-interest to Alex Tillman's personal claims. Their maritime wrongful death claims are separate and distinct from Alex Tillman's personal injury claims. *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 578, 94 S.Ct. 806, 811, 39 L.Ed.2d 9 (1974). Nor has Lykes presented evidence that any of the plaintiffs controlled Alex Tillman's prior suit. Any issue-preclusive effect of Alex Tillman's prior suit upon this action must thus fit within the third, "virtual representation," prong of the general federal rule of issue preclusion.

Plaintiffs' defense to Lykes' virtual representation argument is premised on their alleged factual similarity to the plaintiffs in *Freeman v. Lester Coggins Trucking, Inc.,* 771 F.2d 860 (5th Cir.1985). Mr. Freeman was injured and his daughter killed in an auto accident. He sued in state court for his own personal injuries, but suffered a take-nothing judgment after the defendant was found not negligent. Freeman then sued in federal court on his own behalf and as representative of his wife and three minor children, for the wrongful death of his daughter. The district court dismissed the new claims on collateral estoppel grounds because the defendant had been found not negligent in the first suit.

The Fifth Circuit affirmed the use of collateral estoppel to bar Freeman's wrongful death claim, but reversed as to the claims brought by his wife and surviving

children. The Court held that "close family relationships are not sufficient by themselves to establish privity with the original suit's party, or to bind a nonparty to that suit by the judgment entered therein." 771 F.2d at 863. The Court reasoned that in order for a party in the first suit to adequately represent the interests of a nonparty so as to preclude the non-party in subsequent litigation, there must be more than a showing of parallel interests or even use of the same attorney in both suits. 771 F.2d at 864. "Virtual representation demands the existence of an express or implied legal relationship in which parties to the first suit are accountable to nonparties who file a subsequent suit raising identical issues." 771 F.2d at 865, quoting Pollard v. Cockrell, 578 F.2d 1002, 1008 (5th Cir. 1978).

The determination in Freeman that the relationships of husband and wife and parent and child are insufficient in themselves to make one the representative of the other does not end this Court's issue preclusion analysis, however. In Terrell v. DeConna the Fifth Circuit held that if there is no relevant relationship between the parties, the next inquiry is whether "there is a relationship between their interests, and more importantly, [whether] there is a legal, rather than simply factual relationship between their claims." 877 F.2d at 1271 (emphasis in original).

Ronald Terrell sued in federal court against Raymond DeConna, a van driver, and the ice-cream company that allegedly owned the van, for personal injuries sustained in an auto accident. DeConna confessed negligence, but was absolved of gross negligence. The ice-cream company obtained a judgment in its favor on the negligent entrustment and vicarious liability theories asserted against it. Ronald Terrell's wife, Myrtis Faye Terrell, then sued the same two defendants in state court for loss of consortium, and defendants removed the case to federal court. The district court held that under federal rules of issue preclusion the earlier judgment in the suit brought by Ronald Terrell against the same two defendants barred his wife from relitigating the same theories of liability against the defendants. After a trial on damages only, the district court found the ice-cream company not liable and DeConna liable for negligence in accordance with the judgment in Ronald Terrell's case, and entered judgment for $35,000.00 in favor of Myrtis Faye Terrell against DeConna.

In affirming the district court's decision the Fifth Circuit held that Myrtis Faye Terrell's loss of consortium claim was derivative from her husband's personal injury claims, and therefore, there was a legal, rather than simply a factual, relationship between their claims. 877 F.2d at 1271. The Court distinguished Freeman because it involved family members with "distinct claims which were factually related but were not legally derivative from one another." Id. (emphasis in original). As authority for this distinction the Court cited § 48(2) of the Restatement (Second) of Judgments (1982), which provides:

When a person with a family relationship to one suffering personal injury has a claim for loss to himself resulting from the injury, the determination of issues in an action by the injured person to recover for his injuries is preclusive against the family member, unless the judgment was based on a defense that is unavailable against the family member in the second action.

After discussing the derivation of this rule, the Fifth Circuit stated:

We find that the Restatement rule appropriately reflects the principles underlying the federal law of issue preclusion. Although close family relationships will not alone suffice to establish privity between successive parties for purposes of issue or claim preclusion, the relevant considerations differ when, as in this case but unlike in Freeman, the successor plaintiff's claims are also derivative from the first plaintiff's claims. In that instance, we will apply the Restatement rule, and permit the twice-sued defendant to raise issue preclusive defenses in the subsequent suit by a spouse raising derivative claims.

877 F.2d at 1272.

Like Terrell, the present case is also distinguishable from Freeman. Freeman's

first suit was for his own personal injuries, while the second suit by his wife and children was for the wrongful death of one of the Freemans' daughters. There was no legal relationship between a claim for a plaintiff's own injuries and a claim for the wrongful death of his daughter brought by other family members.[3] By contrast, the wrongful death claims brought by plaintiffs in the present case are legally related to those brought by Alex Tillman. Common to both claims is the issue whether Alex Tillman contracted asbestosis as a result of working on Lykes' vessels, and whether asbestosis caused his injuries (Alex Tillman's suit) and death (the present suit).

Although *Terrell* is also distinguishable, it is much more on point than *Freeman.* Common to *Terrell* and the present case is a second suit by immediate family members for damages predicated on injuries sustained by a husband/father who already sued on those injuries and lost. The only material difference is that Mrs. Terrell's loss of consortium claim was brought while Mr. Terrell was still alive, while the Tillman plaintiffs' loss of consortium and other claims are brought in the form of a wrongful death action. This difference makes *Restatement (Second) of Judgments* § 48(2), on which the Fifth Circuit relied in *Terrell,* inapplicable in this case, since by its terms it does not apply when the second suit arises from the wrongful death of the injured person.

■■■ However, *Restatement* § 46(1) does address the question presented in this case. It states:

When a person has been injured by an act which later causes his death and during his lifetime brought an action based on that act:

(1) If the action resulted in judgment against the injured person, it precludes a wrongful death action by his benefi-

ciaries to the same extent that the person himself would have been precluded from bringing another action based on the act, unless the judgment was based on a defense that is unavailable against the beneficiaries in the second action.

The drafters of § 46 announced the following rationale for this rule, which the Court finds persuasive:

To allow the beneficiaries to sue when the decedent lost his personal injury action subjects the defendant to two suits over the question of his liability, with the possibility of inconsistent results. It also allows what seems worse than double recovery, an opportunity by one member of a family to recover a loss that was legally refused when sought by another. Furthermore, such a rule has the result that the alleged tortfeasor is bound by the determination of liability if he loses, under the rule of [*Restatement*] § 29, but does not gain exoneration if he wins, which is anomalous given the community of interest among his adversaries. To preclude the beneficiaries by the outcome of the decedent's action, on the other hand, gives recognition to the substantial coextensiveness of the social and economic interests in the two actions and to the fact that the decedent had every incentive to litigate effectively....

*Restatement (Second) of Judgments* § 46 (Comment C). Because the Court finds that the rule stated in *Restatement* § 46(1) correctly states the applicable federal law of issue preclusion, the Court adopts *Restatement* § 46(1) and applies it to this case.[4]

Applying § 46(1), the Court finds that plaintiffs' maritime wrongful death claim for damages due to loss of society, consortium, care, maintenance, support, services, advice, counsel, affection, solace, comfort, companionship and assistance is legally de-

---

**3.** Freeman's own claim for the wrongful death of his daughter was barred by collateral estoppel and probably by *res judicata* as well. *Freeman,* 771 F.2d at 862 and n. 2.

**4.** Although the Fifth Circuit has not yet applied § 46, it found § 48 persuasive in *Terrell* and §§ 30, 31, 34, and 39–41 persuasive in *South-*

*west Airlines. See Hardy v. Johns–Manville Sales Corp.,* 681 F.2d 334, 339 (5th Cir.1982) (explaining *Southwest Airlines* ); *Southwest Airlines,* 546 F.2d at 96 and n. 42 (*citing* the draft version of the *Restatement* ). Like §§ 34, 39–41, and 48, § 46 is found in Chapter 4 of the *Restatement,* entitled "Parties and Other Persons Affected by Judgments."

rivative of the claims brought by Alex Tillman during his lifetime, which resulted in a judgment against him. The Court therefore concludes that Lykes has established the three elements of collateral estoppel. Since Alex Tillman last worked on Lykes' vessels in 1971, the causation issue in H–82–1091 and the present case is identical. That issue was litigated in the earlier suit and was the basis for the judgment in favor of Lykes. Accordingly, plaintiffs are collaterally estopped by the judgment in favor of Lykes in Alex Tillman's suit from relitigating their present wrongful death action, and Lykes' motion for summary judgment on these claims is GRANTED.

### Conclusion

The Court concludes that:

(1) plaintiffs' unseaworthiness action is barred by the 1972 amendments to the LHWCA;

(2) the survival action of the Estate of Alex Tillman is barred by *res judicata;*

(3) plaintiffs cannot recover damages for mental anguish, grief and bereavement under general maritime law;

(4) plaintiffs are collaterally estopped from relitigating their maritime wrongful death actions for loss of society, consortium, care, maintenance, support, services, advice, counsel, affection, solace, comfort, companionship and assistance; and

(5) defendant's motions for partial summary judgment and summary judgment on these grounds are GRANTED.