**Lester LEVENE, Sr. and Shirley Levene, Plaintiffs–Appellants,**

**American Casualty Company of Reading, Pennsylvania, Intervenor–Appellant,**

**v.**

**PINTAIL ENTERPRISES, INC., Lloyds of London and Scottsdale Insurance Company, Defendants–Appellees.**

No. 90–4155.

United States Court of Appeals, Fifth Circuit.

Sept. 19, 1991.

Rehearing and Rehearing En Banc Denied Oct. 25, 1991.

John E. McElligott, Philip A. Fontenot, Davidson, Meaux, Sonnier, McElligott & Swift, Lafayette, La., for plaintiffs-appellants.

John R. Walker, Guglielmo, Lopez, Tuttle & Walker, Opelousas, La., for intervenor-appellant.

James R. Sutterfield, Campbell E. Wallace, Hoffman, Sutterfield, Ensenat & Bankston, New Orleans, La., Voories & Labbe, ·John Nickerson Chappuis, Lafayette, La., for defendants-appellees.

H. Evans Scobee, Durrett, Hardin Hunter, Baton Rouge, La., for Scottsdale Ins. Co.

Before WISDOM, KING and BARKSDALE, Circuit Judges.

KING, Circuit Judge:

The principal question in this appeal is whether a vessel owner owes any duties other than those enumerated in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), to its non-stevedore employee conducting operations on a separate vessel. The district court, applying the *Scindia* standards, found that the vessel owner breached no duty to its employee, and dismissed the employee's claims. We agree with the district court's conclusion that *Scindia* provides the proper framework for analysis in this case, and accordingly affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

The district court found the following facts, which we accept as not clearly erroneous. *Kendall v. Block*, 821 F.2d 1142, 1146 (5th Cir.1987); *O'Malley v. United States Fidelity & Guaranty Co.*, 776 F.2d 494, 497 (5th Cir.1985).

Lester Levene was employed by Pintail Enterprises primarily as a heavy equipment operator, but he occasionally performed other work for Pintail as needed. On the morning of February 7, 1986, Captain Preston Hebert, a Pintail employee, inspected the M/V SUTTON, a tugboat chartered and operated by Pintail, and determined that the SUTTON was fit for its intended voyage. Levene, Hebert and Kevin Warner, another Pintail employee, boarded the SUTTON and proceeded to a drilling site, where they performed their daily work. Hebert then was instructed to proceed to Broussard Bros., a barge facility in Intracoastal City, Louisiana, to pick up a barge for the next day's work. En route, night fell and rain began to fall. The crew was to pick up a barge, known as the BB–243, but they found another barge, the BB–242, blocking their access.[1] It was thus necessary to untie the BB–242 and move it out of the way.

Captain Hebert positioned the SUTTON's bow against the side of the BB–242 and aimed the SUTTON's spotlight down the middle of the barge. He then sent Levene and Warner onto the BB–242 and instructed them to untie the lines from the mooring bits at opposite ends of the barge. By this time the rain was steady, wind was blowing, and there was thunder and lightning.

Because of the positions of the SUTTON and the BB–242, the spotlight provided adequate illumination down the middle of the barge, but the light tapered off and became dim at the ends of the barge where the mooring bits were located. Despite the rain and poor visibility, Levene and Warner proceeded to carry out Captain Hebert's instructions. They could see a variety of objects on the deck of the BB–242, including oilfield equipment and scrap material. Levene intended to go to the mooring bit at the far right corner, but the obstructions forced him to walk initially toward the near right corner. After finding a clear route, Levene changed his course and walked directly toward the far right bit. He did this despite the presence of scrap material and grease in his path. Halfway to the mooring bit, Levene slipped and injured his knee. He continued with the linehandling operation, and then returned to the SUTTON and told Hebert about the accident.

Levene filed suit against Pintail, Broussard Bros. (owner of the barge) and Lee Bernard (owner of the SUTTON)[2] under the Jones Act, 46 U.S.C.App. § 688, and the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901 *et seq.* (LHWCA), alleging that Pintail, Bernard and Broussard negligently caused the injury he sustained on the BB–242. The district court granted the defendants summary judgment on the Jones Act claim and conducted a bench trial on the LHWCA claim against Pintail.[3] He amended his complaint to add certain of the defendants' insurers.[4] The court agreed with Pintail that Levene's allegations of negligence—including Pintail's failure properly to illuminate the work area on the BB–242, its failure to clear a path or warn Levene of hazards on the barge, and its insistence on working in bad weather—constituted the potential negligence of Levene's employer. The court held that Pintail's statutory immunity from tort suit for negligent acts taken in its capacity as Levene's employer barred recovery for these acts. The court further held that Pintail had not committed any acts of vessel negligence in its capacity as owner of the SUTTON. The court concluded that there were no unreasonably dangerous conditions aboard the SUTTON of which Levene was not warned, and that Pintail came under no duty to intervene to prevent any injury

1. Both barges were flatbed barges approximately 120 feet long and 30 feet wide, with decks three feet above the water line.

2. Bernard leased the SUTTON to Pintail under an oral bareboat charter agreement. The parties do not dispute that Pintail may be held liable as owner of the SUTTON. For the sake of simplicity, we refer throughout to Pintail as a vessel owner.

3. Levene settled his claims against Broussard Bros., the owner of the barge, prior to trial. He has not appealed the dismissal of the Jones Act claim.

4. Because we affirm the judgment, we need not address the coverage issues raised on appeal by the insurers.

during the line-handling operation. The court entered judgment dismissing all of Levene's claims, and Levene filed this appeal.

## II. ANALYSIS

■ To recover under the LHWCA, a worker must be engaged in maritime employment and be injured on a maritime situs. *Northeast Marine Terminal v. Caputo*, 432 U.S. 249, 255, 97 S.Ct. 2348, 2353, 53 L.Ed.2d 320 (1977). The LHWCA provides for two different types of liability. Under § 904, a covered worker may receive compensation benefits from his employer without regard to fault. Under § 905(b), the same worker may pursue a tort action against the owner of a vessel for acts of vessel negligence. Thus, for example, a longshoreman working for an independent stevedore may recover benefits from his employer and may pursue a separate action in tort against the owner of the vessel on which he was injured. He may not, however, sue his employer in tort. Section 905(a) affords employers full immunity from tort suits by providing that compensation benefits "shall be exclusive and in place of all other liability of such employer to the employee...."

■ Frequently, however, a longshoreman is injured on a vessel owned by his employer. When an employer acts in a dual capacity as vessel owner, the entity retains its immunity for acts taken in its capacity as an employer, but may still be sued "qua vessel" for acts of vessel negligence. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 532, 103 S.Ct. 2541, 2548, 76 L.Ed.2d 768 (1983); *Kerr–McGee Corp. v. Ma–Ju Marine Serv., Inc.*, 830 F.2d 1332, 1339 (5th Cir.1987). The difference between the capacities in which an employer may act is extremely important. The availability of a tort remedy for vessel negligence is a limited exception to the general structure of the LHWCA,[5] which, like state workers compensation schemes,

generally replaces negligence causes of action against employers with a system of predetermined, standardized benefits. Therefore, we have held that an employer that also functions as a vessel owner is liable for vessel negligence under the same negligence standards applicable to an independent vessel owner. *Castorina v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1033 (5th Cir.), *cert. denied*, 474 U.S. 846, 106 S.Ct. 137, 88 L.Ed.2d 113 (1985) ("duty is neither heightened nor diminished when the longshoreman is employed directly by the vessel"). The LHWCA absolutely bars suit for all other acts taken in the capacity as the employer of the injured worker.

This case is like *Jones & Laughlin* in that Pintail occupied a dual capacity as Levene's employer and vessel owner. Levene contends, however, that Pintail as employer is not immune from an action sounding in negligence because the principles of employer immunity under the LHWCA apply only to injured stevedores. We reject this argument as contrary to the plain language of the LHWCA and the consistent holdings of our cases. A better argument, and, we think the one that presents the important question in this appeal, is that Pintail had a duty broader than that set forth in *Scindia* to protect Levene from injury on a barge separate from the Pintail vessel.

### A. *Applicability of Employer Immunity*

■ Levene first argues that Pintail has no immunity in its capacity as employer because Levene and Captain Hebert were not performing stevedoring operations. He contends that "Pintail does not enjoy statutory immunity if its negligence does not arise out of 'stevedoring services.' To enjoy the statutory immunity, Pintail must demonstrate that (1) the captain was performing stevedoring services *and* (2) Lester Levene was performing stevedoring services." (emphasis in original). Levene

---

5. *See, e.g., Fruge v. Penrod Drilling Co.*, 918 F.2d 1163, 1169 (5th Cir.1990) (describing *Scindia* as setting forth "broad pronouncements of immunity on the part of the vessel owner"); *Masinter*

v. Tenneco Oil Co., 867 F.2d 892, 896 (5th Cir. 1989), *modified on other grounds,* 929 F.2d 191 (5th Cir.1991).

appears to derive this argument from the following sentence in § 905(b), the section which provides for an action against a vessel for vessel negligence:

> If [an injured worker] was employed by the vessel to provide stevedoring services, no [negligence action against the vessel] shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel.

33 U.S.C. § 905(b). Having concluded that Pintail is not immune from liability for acts of negligence in its capacity as employer, Levene contends that Captain Hebert's decision to continue working despite the weather, his failure to provide adequate illumination, and his failure to provide a safe place to work should result in a finding that Pintail is liable for his injury.

We think Levene misconstrues both § 905(b) and the structure of employer immunity. Section 905(b) is concerned solely with granting an injured worker a tort remedy against a vessel for vessel negligence, e.g., *Masinter v. Tenneco Oil Co.,* 867 F.2d 892, 896 (5th Cir.1989), *modified on other grounds,* 929 F.2d 191 (5th Cir. 1991); *Teply v. Mobil Oil Corp.,* 859 F.2d 375, 377 (5th Cir.1988), and has nothing to say about the general immunity granted to an employer. That task is performed by § 905(a), which provides that the remedy prescribed in § 904 (compensation based on predetermined benefit schedules) "shall be exclusive and in place of all other liability of [an] employer to the employee...."

■ In *Jones & Laughlin,* the Court took the sentence quoted above from § 905(b) as evidence that Congress intended to preserve the action for vessel negligence when the employer is also the vessel owner: why, the Court asked, would Congress have inserted this sentence barring suits against owner-employers for injuries caused by fellow servants if it had intended to bar *all* suits against employer owners in § 905(a). *Jones & Laughlin,* 462 U.S. at 530–31, 103 S.Ct. at 2547. It is evident that this sentence has nothing to do with the circumstances under which an *employer* retains immunity. It simply bars suits for vessel negligence against a vessel owner when the injury was caused by the negligence of a stevedore's fellow servant. *See Cavalier v. T. Smith & Son, Inc.,* 668 F.2d 861 (5th Cir.), *cert. denied,* 459 U.S. 860, 103 S.Ct. 134, 74 L.Ed.2d 115 (1982).

The relevant section of the LHWCA for purposes of Levene's argument is § 905(a). As noted above, that section provides tort immunity for all negligent acts taken in the capacity as employer, and leaves an injured worker with LHWCA benefits as his exclusive remedy against his employer. *Moore v. Phillips Petroleum Co.,* 912 F.2d 789, 791 (5th Cir.1990); *Foreman v. Exxon Corp.,* 770 F.2d 490, 494 (5th Cir.1985). Nothing in § 905(a) or *Jones & Laughlin* suggests that where workers are injured on vessels owned by their employers, the statute grants immunity only if the worker was performing stevedoring operations. Pintail argues strenuously that Levene *was* performing stevedoring operations and that therefore Pintail retains its immunity. While we doubt that Levene was acting as a stevedore, we need not decide this question, for it is clear that so long as Levene was a covered worker under the LHWCA— whether he was a stevedore or any other type of harbor worker—Pintail as employer enjoys full immunity from suit. We have on numerous occasions precluded recovery against an employer by injured workers performing non-stevedoring activities, e.g., *Moore,* 912 F.2d at 791; *Johnson v. Odeco Oil & Gas Co.,* 864 F.2d 40, 44 (5th Cir. 1989); *Robin v. Sun Oil Co.,* 548 F.2d 554, 556 (5th Cir.1977), and we follow this rule today.

Levene's allegations that Pintail failed adequately to illuminate his path and did not provide him with a safe place to work are best characterized as acts of the employer. We agree with the district court that Pintail is immune from suit for these acts. Under *Jones & Laughlin,* however, Pintail may be liable for negligence in its capacity as a vessel owner. We turn next to the question whether, in this capacity, Pintail breached any duty it owed to Levene.

### B. *Vessel Negligence*

█ Levene next argues that Pintail as a vessel owner breached a duty it owed him even though he was not injured by a dangerous condition on the SUTTON. The district court held that the duties owed Levene were those set forth in *Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), and determined that Pintail committed no vessel negligence under the *Scindia* test. Levene contends that the district court erred because *Scindia* does not define the full scope of a vessel owner's duties when an employee is not injured on the owner's vessel.

█ Congress in § 905(b) replaced the unseaworthiness cause of action against a vessel with liability based on negligence, but gave no indication of what acts would constitute negligence. *Scindia* constituted the Supreme Court's effort to create substantive standards of negligence. *See Castorina*, 758 F.2d at 1032. In *Scindia*, the Court held that a vessel owner has three broad duties to a longshoreman engaged in stevedoring operations. Before operations begin, the owner must exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety...." *Scindia*, 451 U.S. at 167, 101 S.Ct. at 1622. The owner at this time also must warn the stevedore of hidden dangers that could not be discovered by the exercise of ordinary care. *Id.; Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 535 (5th Cir.1986). Once stevedoring operations have begun, the owner has no duty to supervise or inspect the work and must only take care to prevent unreasonable hazards. *Scindia*, 451 U.S. at 172, 101 S.Ct. at 1624; *Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209, 213 (5th Cir.1984). There is an exception to this limited liability after operations have begun. The vessel owner must intervene with respect to obvious dangers if it acquires actual knowledge that a condition of the vessel or its equipment poses an unreasonable risk of harm *and* if the vessel owner acquires knowledge that the stevedore is not exercising reasonable care to protect its employees. *Scindia*, 451 U.S. at 175–76, 101 S.Ct. at 1626; *Lormand v. Superior Oil Co.*, 845 F.2d 536, 542 (5th Cir.1987), *cert. denied*, 484 U.S. 1031, 108 S.Ct. 739, 98 L.Ed.2d 774 (1988).[6]

We have held that although *Scindia* arose in the context of stevedoring operations, the duties it enumerates are not limited to stevedores. In *Lormand*, we found that *Scindia* defined the duties owed to the LHWCA-covered employee of an independent contractor working aboard a jack-up vessel. 845 F.2d at 541–42; *see also Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982). Similarly, in *Teply* we stated that in *Scindia* "[t]he Supreme Court interpreted § 905(b) as it applies to stevedores, but in principle as it applies to other harborworkers who work on board vessels as well." 859 F.2d at 377. As noted earlier, we have held that *Scindia* defines the duties owed to an injured worker by a vessel owner acting in a dual capacity as employer. *Castorina*, 758 F.2d at 1033. Thus, we believe, as did the district court, that *Scindia* governs Levene's § 905(b) action against Pintail for vessel negligence.[7]

---

**6.** Consequently, we have recognized three exceptions to the general rule of nonliability once operations have begun.

Vessel owner liability may arise:
1. [if the vessel owner fails] to warn on turning over the ship of hidden defects of which he should have known [Exception 1]
2. for injury caused by hazards under the control of the ship [Exception 2]
3. [if the vessel owner fails] to intervene in the stevedore's operations when he has actual knowledge both of the hazard and that the stevedore, in the exercise of "obviously improvident" judgment, means to work on in the face of it and therefore cannot be relied on to remedy it. [Exception 3]

*Masinter*, 867 F.2d at 896–97 (citing *Turner v. Costa Line Cargo Servs., Inc.*, 744 F.2d 505, 512 (5th Cir.1984) (Gee, J., dissenting)).

**7.** Levene argues that, because Pintail was a Jones Act employer with respect to Captain Hebert and Kevin Warner, and because both Levene and Warner were performing the traditional duties of seamen on the night of the accident, Pintail should be held to a "Jones Act-like" standard of care in this case. We have held, how-

■ The district court determined that Pintail had not breached its duties under *Scindia* because Pintail "satisfied its obligation to provide its employees with a safe ship." The court likened Pintail's action in turning over the tug after inspecting it and finding no hidden hazards to a shipowner turning over a ship to a stevedore. Once the line-handling operation began, Pintail was under no duty to supervise the work, especially where it took place on another ship. The court also held that Pintail did not breach its duty under *Scindia* to intervene because "[t]he scope of this duty is limited to the confines of a stevedoring operation, which typically encompasses the work area on the vessel to which the stevedore is assigned." While we disagree with the district court's characterization of any *Scindia* duty as applying only to stevedoring operations, we may affirm the judgment even though the district court may have arrived there through a method of reasoning that we would not adopt. *Masinter*, 867 F.2d at 896; *Terrell v. University of Texas System Police*, 792 F.2d 1360, 1362 n. 3 (5th Cir.1986), *cert. denied*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

Levene essentially argues that, because he was performing non-stevedoring operations on a separate barge, Pintail's duties extended beyond the *Scindia* duties of ensuring the safety of the SUTTON, preventing unreasonable hazards once the operation began, and intervening with respect to obvious dangers. He asks us to fashion a standard of care in which a vessel owner such as Pintail must protect him from unreasonably dangerous conditions on any vessel he happens to board while carrying out his duties for his employer-vessel owner. We think such a rule is foreclosed by

the Supreme Court's decision in *Scindia* and our cases recognizing that *Scindia* alone supplies the substantive negligence standards in an action under § 905(b). We cannot find in *Scindia* any mandate for extending the duty of a shipowner to protection against hazards on another ship. The very notion under the dual capacity doctrine of holding one single entity liable for the negligence of "the vessel" but not for the negligence of "the employer" serves to limit liability to those acts taken in connection with the owned vessel itself. Absent alteration by the Supreme Court of the fairly detailed duties it has interpreted § 905(b) as imposing, we decline to fashion a general standard of "reasonable care" that would require a shipowner to protect against any and all hazards a longshoreman might encounter in the course of his work. Other than the duty to protect against hazards under control of the ship (which we consider a narrow exception and discuss below), we do not think *Scindia* imposes any duty on a shipowner to protect against hazards arising on a separate ship.

Levene cites *Pichoff v. Bisso Towboat Co., Inc.*, 748 F.2d 300 (5th Cir.1984), and *Richendollar v. Diamond M Drilling Co.*, 784 F.2d 580 (5th Cir.1986), for the proposition that some standard other than *Scindia* applies.[8] *Pichoff* involved the negligence of the defendant's general manager in giving a worker an inadequate flashlight rather than a drop light so that the worker could inspect the vessel's fuel tanks, and in ordering him to perform his work hurriedly so that the company would not lose money. The court found that only the order to hurry the work constituted vessel negligence, because this order forced the employee to work under dangerous conditions on the vessel itself. The court did not discuss *Scindia* in determining what acts

ever, that a worker "does not cease to be covered by the [LHWCA] merely because at the moment of injury he is not performing his usual duties." *Reynolds v. Ingalls Shipbldg. Div.*, 788 F.2d 264, 271 n. 8 (5th Cir.), *cert. denied*, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 253 (1986). Jones Act duties apply only when a worker meets the test of seaman status in *Barrett v. Chevron U.S.A.*, 781 F.2d 1067 (5th Cir.1986) (en banc); Levene concedes that he is covered by the LHWCA, not the Jones Act, and we there-

fore decline to apply any standards to Pintail other than those mandated by the LHWCA.

**8.** We do not address Levene's citation to *Richendollar*, as the panel's finding of § 905(b) vessel negligence was overturned by this court sitting en banc. *Richendollar v. Diamond M Drilling Co.*, 819 F.2d 124 (5th Cir.), *cert. denied*, 484 U.S. 944, 108 S.Ct. 331, 98 L.Ed.2d 358 (1987).

of the owner-employer could have constituted negligence, but we think our later decision in *Castorina* does not leave any room for the broad-based duty Levene urges.

■t is true that Pintail may be held liable for injury caused by hazards under control of the tug. In *Helaire v. Mobil Oil Co.*, 709 F.2d 1031 (5th Cir.1983), we stated that "the owner has a duty to avoid exposing longshoremen to harm 'from hazards under the act or control of the vessel.'" *Id.* at 1036 (citing *Scindia*, 451 U.S. at 167, 101 S.Ct. at 1622); *see also Masinter*, 867 F.2d at 897. However, we do not view the fleeting contact between Pintail and the BB–242 as the kind of control that could result in a finding of liability. We faced a similar situation in *Ducote v. International Operating Co. of Louisiana, Inc.*, 678 F.2d 543 (5th Cir.1982). In that case, an employee injured while preparing a barge for cleaning sued both the actual owner of the barge and the company temporarily operating it while it was in for cleaning. Like Levene, Ducote argued that the temporary operator was its owner *pro hac vice*, and thus liable to him under the LHWCA. We rejected this attempt to characterize a limited contact as "control" for the purposes of *Scindia* duties, and held that "although [the cleaning company's] tug did move the barge upon which the accident occurred, this movement 'was in connection with its obligation to the owner for cleaning and loading of the vessel. Those incidental operations certainly do not make [the cleaning company] the owner *pro hac vice*.'" *Ducote*, 678 F.2d at 545 (quoting the district court opinion).

The cases in which we have found such control by the vessel owner as to impose a duty generally have involved dangerous conditions on the owned vessel itself. In *Masinter*, we found that the vessel owner's crew was "solely responsible" for placing a stairway which resulted in injury to an independent contractor aboard the vessel.

This level of control placed the owner under "a continuing duty of care to those aboard the vessel." 867 F.2d at 897. In *Theriot*, we found that the owner of a drilling barge controlled a concentration of drilling mud in the work area, on which an independent contractor slipped and fell. 783 F.2d at 535.[9] Levene, by contrast, asks us to deem Pintail in control of the BB–242, and thus to impose a duty to protect against unreasonably dangerous conditions. In light of the fact that Pintail had contact with the BB–242 for only a short time and only by chance as part of an operation to free another barge, we cannot do so.

We reach the same result as in *Ducote* today. Although Captain Hebert temporarily was in "command" of both the SUTTON and the BB–242, this did not give Pintail constructive control over the work area of the barge and did not give rise to the degree of control we think *Scindia* requires before liability can attach. There was no evidence that Pintail had any responsibility for the condition of the deck of the BB–242. Pintail therefore was under no duty to make any inspection or use ordinary care to ensure that the BB–242 was free of unreasonable hazards.

The district court found, from the testimony of Captain Hebert, that the SUTTON had been inspected and was deemed to be a safe vessel prior to the commencement of the day's operations. Furthermore, the court found that nothing changed the condition of the SUTTON before Pintail's employees engaged in the linehandling operation. The accident occurred not as the result of any defect in the SUTTON, but at best was the result of a series of employment decisions. All the missteps Levene cites, from the decision to continue working despite the adverse weather conditions to the placement of the spotlight in the middle of the BB–242 must be classified as potential acts of employer negligence, not vessel negligence.[10] The district court's findings

---

9. *See also Turner v. Costa Line Cargo Servs., Inc.*, 744 F.2d 505, 508–09 (5th Cir.1984); *Walker v. Blacksea S.S. Co.*, 637 F.2d 287, 292–93 (5th Cir.1981).

10. Of course, we express no opinion on whether these acts actually were negligent, as employer negligence is irrelevant under the LHWCA. The important point here is that these were acts of

concerning Pintail's lack of negligence in its capacity as vessel owner are essentially factual in nature, and must be upheld unless clearly erroneous. *Lormand,* 845 F.2d at 543 & n. 9. We do not find them to be such.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

the *employer,* and are not the kind of acts that

can be classified as vessel negligence.