REVISED - December 5, 2000

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

––––––––––

No. 99-30535

––––––––––

In Re:  In the Matter of the Complaint of
ADM/GROWMARK RIVER SYSTEM, INC.,
as Owner Pro Hac Vice of the Barge Rebecca,
Praying for Exoneration From or Limitation of Liability

ADM/GROWMARK RIVER SYSTEM, INC.,

Petitioner-Appellee,

versus

LEE ROY LOWRY,

Claimant-Appellee,

versus

KOSTMAYER CONSTRUCTION, INC.,

Claimant-Appellant.

--------------------
Appeal from the United States District Court
for the Eastern District of Louisiana
--------------------
November 30, 2000

Before REAVLEY, BENAVIDES and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

This case requires that we determine whether section 905(b) of the Longshore and Harbor Worker's Compensation Act (LHWCA) invalidates certain liability allocation provisions in an agreement between two vessel owners, one of which also employs a harbor worker injured on the job.  After thoroughly considering the language of section 905(b), the legislative history of the statute, as well as the cases interpreting the provision, we conclude that Congress did not intend its prohibition of liability allocation agreements to protect dual capacity employers beyond the

extent of their immunity from tort liability as employers under section 905(a). As a consequence, we hold that a dual capacity employer sued for negligence in its capacity as vessel owner may terminate its rights to contribution from another vessel by agreeing to contractually indemnify that vessel. Based on this holding, we find that the liability allocation provisions relevant to this case are valid to the extent that they preclude a contribution claim by Kostmayer Construction, Inc. (Kostmayer), as a vessel owner, against ADM/Growmark River System, Inc. (ADM). We therefore AFFIRM the rulings of the district court.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

ADM owns a grain elevator in Ama, Louisiana used to transfer cargo to and from ships and river barges. In August 1995, ADM shut down its cargo operations to perform maintenance work on the elevator facility and the channel through which barges and ships access the facility. On August 15, 1995, ADM and Kostmayer Construction, Inc. (Kostmayer) executed a written contract in which Kostmayer agreed to replace a fender system in the access channel for a specified sum of money (the "Agreement"). The Agreement included four provisions allocating financial responsibility for injuries to Kostmayer's employees to Kostmayer (the "Liability Allocation Provisions").[2] Specifically, Kostmayer agreed to fully indemnify ADM and hold ADM

---

[1] ADM filed a Motion to Supplement the Record prior to oral argument in this case. That motion is denied.

[2] The Liability Allocation Provisions of the Agreement provide in relevant part:

1. Section V(A): "Contractor [Kostmayer] . . . is solely responsible for the safety and health of its employees."
2. Article X Insurance. "In consideration of the parties' desire to effectively identify and manage certain liability risks, . . . liability of contractor [Kostmayer] . . . shall not be limited . . . and owner [ADM] shall have no liability whatsoever for injuries to the employees of contractor or its subcontractors regardless of owner's sole or concurrent negligence . . . or other owner fault, if such injuries arrive out of the work of contractor or its subcontractors by or for owner."
3. "Indemnification. . . . liability of contractor [Kostmayer] . . . for injuries to their employees shall not be limited . . . and that owner [ADM] shall have no liability whatsoever for injuries to the employees of contractor. . . ."
4. XI. "Contractor [Kostmayer] agrees to . . . hold owner [ADM] . . . harmless . . . against any and all claims, . . . for personal injuries . . . suffered by employees of

2

harmless for any injuries suffered by Kostmayer employees during the course of the Kostmayer's work under the contract.

On August 19, 1995, Lee Roy Lowry, an employee of Kostmayer, suffered personal injuries while repairing ADM's fender system on behalf of Kostmayer.[3] On March 20, 1998, Lowry filed a personal injury suit in Louisiana state court against Kostmayer and ADM seeking damages pursuant to the general maritime law and LHWCA. Lowry's state court petition alleges that independent negligence by both Kostmayer and ADM *vessels* caused his injuries. On September 15, 1998, ADM filed a Complaint for Exoneration From Or Limitation Of Liability in the United States Court for the Eastern District of Louisiana citing section 183(a) of the Limitation Act. *See* 46 U.S.C. App. § 183(a). Lowry filed an Answer to the complaint, as well as a Claim in the proceeding. Kostmayer filed an Answer and Claim preserving its rights to indemnity or contribution from ADM in the event that Kostmayer should be cast in judgment in favor of Lowry. Kostmayer's federal claim for contribution against ADM does not seek reimbursement of benefits paid or payable to Lowry under the LHWCA. Rather Kostmayer's

contractor . . . even if caused by the sole or concurrent negligence or fault of the owner."

[3] The facts of the accident that gave rise to Lowry's injury are not directly relevant to this appeal. Nevertheless, they help to provide some context to the present indemnity dispute. We recite them here as they have been recited in the briefs solely for that purpose and without making any determinations regarding their accuracy. On August 19, 1995, two barges controlled by Kostmayer and one controlled by ADM operated in the access channel to ADM's grain facility. One of Kostmayer's barges drove pilings near ADM's elevator facility using a movable land crane that had been placed on the barge (the "Piling Barge"). ADM had leased a deck barge, the REBECCA, to perform maintenance work in the access channel unrelated to Kostmayer's fender repair project. ADM had moored the REBECCA to the grain facility using two land-based winch cables; by tightening or loosening the tension on these cables, ADM could position the REBECCA to perform maintenance work at various places in the channel. Finally, a second Kostmayer barge, on which Lowry worked, collected garbage and other materials some 200 to 300 feet from the Piling Barge and the REBECCA (the "Garbage Barge").

While operating in the access channel August 19, the Piling Barge dropped a 10,000 pound piling from its crane into the water. As the piling fell to the bottom of the channel, it clipped the underwater winch cables connecting the REBECCA to the grain facility. The force of the piling falling against the cables allegedly caused the REBECCA to surge towards the Garbage Barge on which Lowry stood. Fearing a collision (which did not occur), Lowry ran toward the center of his barge but slipped on the mud, water and other debris that had been collected during the course of the day. As a result of the fall, Lowry suffered injury.

claim is limited to contribution for any negligence liability that Kostmayer may incur to Lowry in its capacity as a vessel owner.

ADM filed Motions for Summary Judgment seeking dismissal of both Lowry's and Kostmayer's claims. Kostmayer filed its own Motion for Partial Summary Judgment seeking to nullify the Liability Allocation Provisions in the Agreement using section 905(b) of the LHWCA. Kostmayer also sought dismissal of Lowry's claims against it. Finally, Lowry filed an Unopposed Motion for Modification of Stay and Restraining Order requesting that the district court lift the stay on his state court proceeding. Immediately following oral argument on these motions, the district court granted ADM's motion for summary judgment with respect to Kostmayer and Lowry's motion seeking to lift the stay. With respect to the grant of summary judgment, the district court interpreted the Liability Allocation Provisions to contain a "covenant not to sue" not prohibited by section 905(b) of the LHWCA. Finding Kostmayer's contribution action barred by the covenant not to sue, the court granted summary judgment for ADM. Left with a single-claimant exoneration action, the district court lifted the stay on state court proceedings based on appropriate stipulations by Lowry on the scope of ADM's liability and the continuing jurisdiction of the federal court to resolve issues related to that limit.[4] Kostmayer now appeals these rulings of the district court.

## DISCUSSION

Lee Roy Lowry is an injured longshoreman seeking to exercise his rights under the savings to suitors clause to try his maritime personal injury claims against Kostmayer and ADM in the forum of his choice - Louisiana state court. *See* 28 U.S.C. § 1333(1) (granting federal courts exclusive jurisdiction over admiralty and maritime cases, but "saving to suitors in all cases all other remedies to which they are otherwise entitled.") At the same time, ADM has exercised its

---

[4] The district court remanded the case to the state court to resolve all remaining motions. Because we affirm the district court's grant of summary judgment with respect to Kostmayer's claim for contribution against ADM, we need not take jurisdiction over the district court's order lifting the stay and state no opinion as to our power to accept jurisdiction over that order.

right to limit its liability in federal court under the Limitation Act. *See* 46 U.S.C. App. § 181 *et seq.*[5] In balancing the interests of an injured plaintiff in a particular forum against the right of a vessel owner to limited liability, we have previously recognized that the "primary concern is to protect the shipowner's absolute right to claim [the Limitation Act's] liability cap, and to reserve the adjudication of that right in the federal forum." *See Magnolia Marine Transport Co. v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992); *ODECO Oil & Gas Co. v. Bonnette*, 74 F.3d 671, 675 (5th Cir. 1996) ("ODECO II") ("The shipowner's right to limitation takes precedence over the claimant's rights to proceed in the forum of their choice.").

In order for claims to proceed in state court after an exoneration or limitation action has been filed in federal court, *all claimants* must sign a stipulation protecting the vessel owner's rights under the Limitation Act. *In re Complaint of Port Arthur Towing, Co.*, 42 F.3d 312, 316 (5th Cir), *cert. denied*, 116 S.Ct. 87 (1995); *ODECO Oil & Gas Co., Drilling Division v. Bonnette*, 4 F.3d 401, 405 (5th Cir. 1993), *cert denied*, 511 U.S. 1004, 114 S.Ct. 1370 (1994). In the present case, Lowry and ADM have agreed to appropriate stipulations, but Kostmayer has not. This circuit has previously held that "parties seeking indemnification and contribution from a shipowner must be considered claimants within the meaning of the Limitation Act." *ODECO II*, 74 F.3d at 675. So long as Kostmayer retains a valid contribution claim against ADM, Kostmayer must also agree to stipulations protecting ADM's right to limited liability under the Limitation Act before any claims against ADM may proceed in state court.

The district court granted summary judgment for ADM on Kostmayer's contribution claim, thus allowing Lowry's state court claims to go forward based on the stipulations between Lowry and ADM. We review a district court's grant of summary judgment de novo, applying the same standard of review as would the district court. *See Merritt-Campbell, Inc. v. RxP Products, Inc.,* 164 F.3d 957, 961 (5th Cir. 1999). The present appeal does not depend on the factual

---

[5] Kostmayer has not claimed the right to limited liability under the Limitation Act.

findings, but the resolution of legal questions.  The district court's grant of summary judgment turned on its determination that (1) section 905(b) does not invalidate "covenants not to sue," and (2) the Agreement contained such a covenant.[6]  We review questions of statutory interpretation de novo.  *U.S. v. Lowe*, 118 F.3d 399, 400 (5th Cir. 1997); *Estate of Bonner v. United States*, 84 F.3d 196, 197 (5th Cir. 1996).  Should we ultimately disagree with the trial court's reasoning, we may nevertheless affirm the summary judgment on any basis raised below and supported by the record. *See Rushing v. Kansas City Southern Ry. Co.*, 185 F.3d 496, 517 (5th Cir. 1999); *see also* 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE s. 2716, at 290 (3d ed.1998).

The LHWCA provides a comprehensive workers compensation scheme for longshoreman, harbor workers and other maritime laborers injured during the course of their employment.  As with any workers compensation scheme, this one has always balanced the interests of injured workers in receiving substantial monetary relief quickly and irrespective of fault against the interests of employers in limited liability.  *See* THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW §7-1, 371 (2d ed. 1994).  To this end, Congress guaranteed covered maritime workers injured on the job compensation from their employers without requiring proof of the employer's fault, but only up to certain statutory limits.  *See* 33 U.S.C. § 904; *Levene v. Pintail Enterprises, Inc.*, 943 F.2d 528, 531 (5th Cir. 1991).  In exchange for accepting no-fault liability, employers of longshoreman and harbor workers also received immunity from suit for their negligence as employers or the negligence of their employees.  *See* 33 U.S.C. § 905(a) (providing

---

[6] Kostmayer never disputes that the Liability Allocation Provisions, if upheld, merit summary judgment for ADM on Kostmayer's contribution claim.  Indeed, an indemnitor cannot claim contribution from their indemnitee on matters covered by the indemnity agreement without creating a circle of contribution to indemnitor followed by indemnity repayment to indemnitee. The issue of whether the Agreement in fact contains a covenant not to sue as opposed to a different type of agreement has been hotly debated in this appeal.  We need not reach this issue since we ultimately interpret the scope of section 905(b) differently than the district court.

that compensation benefits under section 904 "shall be exclusive and in place of all other liability of such employer to the employee. . . .")

Though limiting the tort liability of employers, Congress expressly provided in section 905(b) that third party vessels could be sued in tort for their own negligence in causing personal injury to longshore and harbor workers. Section 905(b) provides that:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and **the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void**. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. 33 U.S.C. § 905(b) (emphasis added).

In this case, we must decide the scope of the highlighted language, specifically whether that language invalidates all liability allocation agreements between vessel owners and dual capacity employers. On its face, section 905(b)'s prohibition invalidates only those "agreements or warranties" that render *an employer* liable to a vessel owner for damages levied against that vessel owner in a third party action. This Court has previously interpreted the prohibition narrowly as it applies to dual capacity employer/vessel owners, holding that section 905(b) does not invalidate third party contribution claims against a vessel owner that also employs stevedores. *See Tran v. Manitowoc Engineering Co.*, 767 F.2d 223, 227 (5th Cir. 1985)("[W]e hold that a third party claim for joint tort feasor contribution against a vessel owner/stevedore employer for negligent acts as a vessel owner is not barred by the LHWCA."). Building on our holding in *Tran* and the plain language of the statute, we conclude that the scope of section 905(b)'s prohibition on liability allocation agreements should be limited by the prohibition's purpose - the protection of employers immune from direct personal injury suits. As a consequence, we hold that liability

7

allocation agreements between two vessels, one of which also employs longshoreman, are invalid only when they infringe on the statutory immunity of the dual capacity vessel-employer.

Our reasoning is well supported by the history of section 905(b). Between 1946 and 1972, two Supreme Court decisions complicated the operation of the LHWCA's workers compensation scheme by making it possible for employers immune from direct suit under section 905(a) to nevertheless incur liability indirectly through indemnification or contribution. Difficulties arose in 1946 when the Supreme Court allowed injured longshore and harbor workers to maintain actions for unseaworthiness - essentially a strict liability action - against the vessels on which they worked. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946). Because this remedy exposed vessel owners to liability for the negligence of the stevedoring company hired to load or unload their ships, the Supreme Court eventually found an implied warranty in all stevedoring contracts. This implied warranty permitted vessel owners to bring indemnity actions against their stevedore contractors and thus recoup damages paid out to injured workers. *See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124 (1956). Through this circuitous chain of liability, employers became strictly liable for the full amount of personal injury awards in favor of their injured employees, despite Congress' declaration that employers were immune from direct suits by their injured employees. *See* S. REP. NO. 92-1125, at 9 (1972) ("The end result [of *Sieracki* and *Ryan*] is that, despite the provision in the Act which limits an employer's liability to the compensation and medical benefits provided in the Act, a stevedore-employer is indirectly liable for damages to an injured longshoreman who utilizes the technique of suing the vessel under the unseaworthiness doctrine.")

In 1972, Congress amended section 905(b) to break this indemnity circle. *See Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 113 n.6 (1974). First, in the initial clause of 905(b), then later in the fourth sentence of the provision, Congress overruled *Sieracki* by limiting vessel owners' liability to those injuries caused by vessel owners' negligence. *See* S. REP. NO. 92-1125, at 10 (1972). Next, Congress eliminated the implied warranty found by the Supreme Court

8

in *Ryan* by specifying that an "employer shall not be liable to the vessel" for damages caused by the vessel's negligence "directly or indirectly." *See id.* at 11. Finally, and of particular importance to this case, Congress declared invalid as a matter of public policy any contractual provision that imposes tort liability on employers of longshoreman that would otherwise be immune from tort liability. *See id.* Congress feared that if such provisions were available, vessel owners would use their superior bargaining power to include them in all stevedoring contracts and thus circumvent the allocation of liability envisioned by the statute. *See id.*; H. REP. NO. 92-1441 (1972), *reprinted in* U.S.S.C.A.N. 4698, 4704 ("[U]nless . . . hold-harmless, indemnity or contribution agreements [between a stevedore and a vessel owner] are prohibited as a matter of public policy, vessels by their superior economic strength could circumvent and nullify the provisions [limiting the potential liability of owners] by requiring indemnification from a covered employer for employee injuries."). Through these three amendments, Congress sought to protect *employers* from liability outside the constraints of the worker's compensation scheme, while subjecting vessels to tort liability, but only in relation to their own negligence. Interpreting this provision in traditional stevedoring operations, the Supreme Court has held that vessel owners may not claim indemnity or contribution from employers, even though this may mean that through joint and several liability, the vessel owner may in fact be liable for the negligence of an employer. *See Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256, 268-69 (1979).

The case before us does not arise in the context of a traditional stevedoring arrangement because Kostmayer, the employer seeking to invalidate a liability allocation agreement, also faces liability under section 905(b) as a vessel. Congress addressed the potential tort liability of the "dual capacity" employers in the second and third sentences of section 905(b). In essence, Congress intended that "the same principles apply in determining liability of the vessel which employs its own longshoremen or shipbuilders or repairmen as apply when an independent contractor employs such persons." S. REP. NO. 92-1125, at 12 (1972). Thus, dual capacity employers remain immune from direct suits by employees injured during the course of standard

9

stevedoring operations, shipbuilding, repair work and breaking services. In all other instances, however, injured employees may sue their dual capacity employers for vessel negligence and receive damages outside the scope of the statutory compensation scheme. *See Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 532 (1983); *Levene*, 943 F.2d at 531 (when an employer acts in "dual capacity" as vessel owner "the entity retains its immunity for acts taken in its capacity as employer, but may still be sued 'qua vessel' for acts of vessel negligence."). Kostmayer contends that, even as a vessel owner subject to direct liability in tort, it should benefit from the prohibition of liability allocation provisions that Congress adopted to protect employers otherwise immune from tort liability by section 905(a). Like the district court we reject Kostmayer's position, but for reasons slightly different from those relied upon by the district court.

In granting summary judgment in favor of ADM, the district court focused (1) on the presence of a covenant not to sue in the Agreement, and (2) the exclusion of covenants not to sue from section 905(b)'s prohibition of certain liability allocation agreements. To the extent that the district court reasoned that a "covenant not to sue" is not subject to section 905(b) simply because it is a "covenant not to sue," we agree with Kostmayer that the district court is incorrect. Congress did not limit its prohibition of liability allocation agreements to provisions of any particular nomenclature, the prohibition applies to "any agreement or warranty" that disrupts the statutory allocation of liability among employers, vessels and vessel owners. Prohibited agreements may be drafted as covenants not to sue or as indemnity agreements. The crucial inquiry is not the classification of the contract provision at issue but the effect of that provision on an *employer's* liability for the personal injuries of its employees. A provision offends section 905(b)'s prohibition if it imposes any liability on an employer that is otherwise immune from suit under section 905(a).

The Liability Allocation Provisions of the Agreement in this case are valid to the extent that they bar a contribution claim by Kostmayer against ADM because in this context the

10

provisions do not impose liability on Kostmayer as an employer otherwise immune from suit under section 905(a). Indeed, the only basis for Kostmayer's contribution claim against ADM is Kostmayer's prospective liability *as a vessel*.[7] Should Kostmayer be determined to have acted solely as an employer, it will be immune from suit under sections 905(a) and (b). In that event, the question of Kostmayer obtaining contribution from ADM will be moot.

Kostmayer maintains that our decision could result in Kostmayer, the employer of the injured longshoreman, having to bear responsibility for the negligence of ADM, a result that contradicts the intent of Congress. We agree that if both Kostmayer and ADM are found to have been negligent as vessels, our decision today will prevent Kostmayer, as owner of a negligent vessel, from seeking contribution from ADM based on the Liability Allocation Provisions of the Agreement. Moreover, our decision will allow ADM to seek indemnification from Kostmayer, as a liable vessel owner, for damages that it is required to pay Lowry. This result comports with Congress' intent to prevent vessels from pressuring *employers* immune from tort liability under section 905(a) to accept such liability indirectly through contract. Nothing in the legislative history of section 905(b) suggests that the prohibition on contractual indemnity between employers and vessels should be extended to protect dual capacity employers facing direct liability in their vessel capacity. In fact, as vessel owners, neither party needs Congress' protection because both share equal bargaining power. In sum, we feel comfortable refusing to extend the scope of Congress' prohibition of liability allocation provisions to include those provisions negotiated between vessel owners, at least so far as the effect of the provision is solely to prevent one vessel owner from seeking contribution from another.

Our holding is limited by the procedural posture of the case before us. Like the district court, we do not determine whether ADM is entitled to enforce the Liability Allocation Provisions

---

[7] We note that no determination has been made regarding Kostmayer's liability as a vessel owner. That determination will be made on remand to the state court.

11

against Kostmayer in all circumstances.[8]  Our holding relates only to the validity of the Liability Allocation Provisions against Kostmayer as a vessel owner.  As previously explained, Kostmayer will only require contribution from ADM in the event that Kostmayer is found liable to Lowry for damages.  Since Kostmayer can only be liable to Lowry for damages as a vessel owner, we are able to conclude, even prior to litigation on the merits, that the Liability Allocation Provisions will be valid to the extent that they bar Kostmayer's contribution claim against ADM.  Upon remand to state court, however, Kostmayer may be found immune from direct suit by Lowry, either as an employer or otherwise under section 905(b).  In this event, section 905(b)'s prohibition would seem to invalidate the Liability Allocation Provisions and prevent ADM from seeking indemnity against Kostmayer.  Otherwise, the provisions would enable ADM as a vessel to impose tort liability on Kostmayer as an employer immunized from direct suit by section 905(a).  We do not attempt to address this or other factual variations today; we point out this limit on our holding to emphasize that the validity of the Liability Allocation Provisions depends on Kostmayer's status as employer or vessel owner.  ADM is entitled to enforce its Liability Allocation Provisions against Kostmayer only to the extent that Kostmayer is found liable to Lowry as a vessel.

### CONCLUSION

If Kostmayer incurs liability in this case under the LHWCA, it will be as a vessel owner, not as an employer.  As a vessel owner, Kostmayer is not entitled to the benefits of section 905(b)'s prohibition on certain liability allocation agreements.  Thus, we are able to affirm the district court's grant of summary judgment in favor of ADM because Kostmayer's claim for contribution is barred by the Liability Allocation Provisions of the Agreement.  Since Kostmayer cannot maintain its claim for contribution, the district court properly lifted the stay on Lowry's state court proceedings based on the agreed stipulations between Lowry and ADM.

---

[8]  In ruling that section 905(b) did not prohibit a covenant not to sue contained in the Agreement, the district court granted only ADM's motion to dismiss Kostmayer's claim for contribution.  The district court expressly did not rule on ADM's claim for indemnity against Kostmayer.

12