Monica M. HERETICK, Plaintiff,

v.

AMBERLEY SHIPPING CORPORA-
TION, Defendant and Third–Par-
ty Plaintiff,

v.

Honeywell International, Inc.,
(formerly Allied Signal, Inc.)
Third–Party Defendant.

No. CIV.A.4:01CV98.

United States District Court,
E.D. Virginia,
Newport News Division.

Oct. 17, 2002.

Ralph Rabinowitz, Esquire, Rabinowitz, Swartz, Taliaferro, Lewis, Swartz & Goodlove, Norfolk, for Plaintiff's Counsel.

Mark T. Coberly, Esquire, Vandeventer, Black LLP, Norfolk, Counsel for Defendant & Third–Party Plaintiff.

James Clark Shannon, Esquire, Midkiff, Muncie & Ross, PC, Counsel for Third–Party Defendant.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter is before the court on a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), brought by third-party defendant Honeywell International, Inc. For the reasons set forth below, the motion is GRANTED.

### I. Factual and Procedural History

Monica Heretick ("Heretick") was employed by Honeywell International Inc. ("Honeywell"), formerly Allied Signal, Inc.

("Allied"), as a line handler on Allied's dock in Hopewell, Virginia. She, along with other equipment operators, participated in handling mooring lines for vessels that docked at the pier. On September 28, 1999, Heretick was assisting in the docking operation of the M/V ZENOVIA when she was struck by a line and injured. The M/V ZENOVIA was owned by Amberley Shipping Corporation ("Amberley") but had been chartered to Honeywell at the time of the accident. After her injury, Heretick filed for, and began receiving, benefits under the Longshore Harbor Workers Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA") from Honeywell, her employer. On September 26, 2001, Heretick filed an action under 46 U.S.C. § 740 against Amberley, as vessel owner, alleging that her injuries were caused by the negligence of the ship's crew.[1] On March 15, 2002, Amberley filed a third-party complaint for indemnity or contribution against Honeywell. On July 26, 2002, Honeywell moved to dismiss the third-party complaint, pursuant to Rule 12(b)(6). Amberley filed a response in opposition to Honeywell's motion to dismiss, to which Honeywell replied. The court held a hearing on this matter on October 2, 2002. The matter is now ripe for review.

### II. Standard of Review

A complaint should not be dismissed for failure to state a claim pursuant to Rule 12(b)(6), unless it appears to a certainty that the nonmoving party cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Labram v. Havel*, 43 F.3d 918, 920 (4th Cir.1995). The standard governing Rule 12(b)(6) dismissal motions requires that a court reviewing such a motion accept the complaint's factual allegations as true and view the allegations

---

**1.** Jurisdiction is founded upon 28 U.S.C. § 1333, the general admiralty jurisdiction.

in a light most favorable to the nonmoving party. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *GE Inv. Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001).

As a general rule, in the context of a motion to dismiss under Rule 12(b), the court may not consider matters outside the pleadings without converting the motion to dismiss into a motion for summary judgment. *Gay v. Wall,* 761 F.2d 175, 178 (4th Cir.1985). However, the court may consider dispositive documents that are either attached to, or referenced in, the complaint. *Moore v. Flagstar Bank, et al.,* 6 F.Supp.2d 496 (E.D.Va.1997) (citing 5A Charles A. Wright and Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)).[2] Thus, the court can consider the charter party contract between Amberley and Honeywell, which was referenced in the third-party complaint, and attached to the third-party motion to dismiss as an exhibit.[3]

### III. *Analysis*

In its third-party complaint, Amberley alleges that Honeywell breached the safe berth clause contained in the charter party contract because it failed to properly train its equipment operators, including Heretick, in handling mooring lines, and that this failure created an unsafe berth for the docking ships. This breach of warranty, Amberley claims, requires Honeywell to indemnify Amberley for any judgment against it in favor of the plaintiff. Honeywell seeks to dismiss the complaint on two grounds: (1) the safe berth clause provides no basis for indemnification for personal injuries; and (2) the LHWCA bars suits for indemnity by a vessel owner against an employer.

### A. The Statutory Framework

■■■ The LHWCA, like any workers' compensation scheme, requires employers to compensate longshoremen and harbor workers injured in the course of employment, without regard to fault. 33 U.S.C. § 905. The statute reflects a delicate balance between the rights of injured employees and the employer's interest in a limited liability. By making employers liable for an employee's injuries, without regard to fault, the statute allows an employee to begin collecting compensation under the LHWCA at the earliest possible date. *See Liberty Mut. Ins. Co. v. Ameta & Co.,* 564 F.2d 1097, 1103 (4th Cir.1977). In exchange for this absolute liability, the employer's obligation is strictly limited to the statutory compensation and benefits; employees are prohibited from suing their employer in tort. This limitation is designed to ensure that the employer will adequately reserve funds to pay the statutory compensation to eligible employees every day. *See Oman v. Johns–Manville Corp.,* 482 F.Supp. 1060, 1069 (E.D.Va. 1980).

Prior to 1972, however, several Supreme Court cases had complicated the statutory

---

2. *See Papasan v. Allain,* 478 U.S. 265, 268 n. 1, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (noting that the public record could be considered on motion to dismiss); *Anheuser–Busch, Inc. v. Schmoke,* 63 F.3d 1305, 1312 (4th Cir.1995) (explaining that consideration of legislative history did not require conversion to summary judgment), *vacated on other grounds,* 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996).

3. Honeywell also submitted the affidavit of Daniel Cappio, a chartering manager for Honeywell, who was involved in the interpretation and application of the contract involving the M/V ZENOVIA. The court does not consider this affidavit in the context of this motion to dismiss.

framework by eroding the employer immunity. For example, a longshoreman could bring a personal injury action against a third-party vessel under the doctrine of unseaworthiness, which was a doctrine of strict liability. *See Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 95–96, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The vessel could, however, seek indemnification from the employer based on an express contract of indemnification or on an implied warranty of workmanlike performance to the vessel. *Ryan Stevedoring Co. v. Pan–Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). In this manner, the employer became indirectly liable to its employee in tort, despite Congress' clear intention that employers be immune from direct suits by their injured employees. *In Re: ADM/Growmark River System, Inc., v. Lowry*, 234 F.3d 881, 887 (5th Cir.2000).

In 1972, Congress amended the LHWCA in order to prevent this "end run" around the exclusivity provision. As amended, section 905 of the LHWCA now provides:

> (a) The liability of an employer prescribed in section 4 *shall be exclusive and in place of all other liability* of such employer to the employee, his legal representative ... and anyone entitled to recover damages from such employer at law or in admiralty on account of such injury or death....
>
> (b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third-party in accordance with the provi-

sions of section 933 of this title, *and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void....*

33 U.S.C. § 905 (1972) (emphasis added). The 1972 amendments are still in effect and they made significant changes to the statutory framework. Congress first overruled *Sieracki* by eliminating the employee's right to recover under the strict liability doctrine of unseaworthiness, thereby limiting the vessel's liability to those injuries caused by the vessel owner's negligence. Second, Congress overruled *Ryan* by abolishing the vessel owner's right to indemnity from the employer. The 1972 amendments reflect Congress' intent to protect employers from liability outside the constraints of the LHWCA, while subjecting vessel owners to suits brought only on the basis of their negligence. *See* S.Rep. No. 92–1125, at 10 (1972).

Frequently, however, a longshoreman is injured on a vessel owned by his employer. In 1983, the Supreme Court held that section 905(b) does not prevent an employee from maintaining a negligence action against his employer, if the employer is also the owner of the vessel that caused his injury. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 531–32, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983).[4] In such a case, the defendant is being sued in its capacity as a vessel owner, not as an employer, and thus has no immunity.

### B. Breach of Warranty of Safe Berth

Although Amberley predicates its claim for indemnity or contribution on a contract theory, there is no express indemnification clause in the charter party agreement be-

---

4. In 1984, Congress again amended § 905(b) to bar "dual capacity" actions brought by maritime employees engaged in "shipbuilding, repairing, or breaking services." 33 U.S.C. § 905(b) (1984). There is no suggestion that Heretick was performing one of these tasks, so this provision is not applicable to the case at bar.

tween Amberley and Honeywell. Amberley instead bases its third-party complaint on a clause in the charter party requiring Honeywell, the charterer, to provide the M/V ZENOVIA with a "safe berth." The charter party states, in language typed into the margin of the contract:

> one (1) safe berth always afloat Hopewell, Virginia where maximum 24 feet fresh water and maximum 600 feet length overall and maximum 93 feet 3 inches beam completing one (1) safe berth always afloat Norfolk, Virginia (intention Elizabeth River Terminal E.R.T.) Where 35 feet brackish water available. Vessel will lift approximately 16,000/17,000 metric tons on 24 feet fresh water.

(Third–Party Compl., Ex. B at 2). Honeywell breached this warranty, Amberley claims, by failing to train its employees in the proper handling of docking lines. Therefore, Amberley argues that Honeywell must be required to indemnify Amberley for any liability it is found to have to Heretick.

Amberley cites two cases for the proposition that a safe berth clause is actually an implied promise to indemnify the vessel owner for a personal injury claim. *Oglebay Norton Co. v. CSX Corp.,* 788 F.2d 361 (6th Cir.1986); *Western Tankers Corp. v. United States,* 387 F.Supp. 487 (S.D.N.Y. 1975). Because liability in these cases was predicated on the warranty of unseaworthiness or the warranty of workmanlike performance, the court finds them to be inapposite and unpersuasive.[5]

■ When the language of the contract itself is examined, it is clear that Honeywell's obligation to Amberley was to provide a safe berth *for the vessel itself;* neither expressly, nor by implication, was Honeywell obligated to indemnify Amberley against personal injury actions. In its terms, the safe berth clause refers to depth of water where the vessel may lie safely afloat. Nothing is said about providing safe facilities for the crew or the line handlers. Safe berth clauses conventionally have been included in contracts for the protection of the owner of the vessel, so that the captain can refuse to go into an unsafe berth without violating the contract. *National Marine Service, Inc. v. Gulf Oil Co.,* 433 F.Supp. 913 (E.D.La.1977) (citing Gilmore and Black, *The Law of Admiralty,* 204 (2d Ed.1975).[6]

**5.** In *Oglebay,* a Jones Act case, there was no safe berth clause at issue. Instead, the vessel owner based its claim for indemnity on a breach of the implied warranty of workmanlike performance, which allows a vessel owner to seek indemnification from a dock owner for injuries resulting from a breach of the warranty. *Oglebay,* 788 F.2d at 365; *see also Medomsley Steam Shipping Co. v. Elizabeth River Terminals, Inc.,* 354 F.2d 476 (4th Cir. 1966) (noting that a wharfinger's duty included furnishing a safe berth and warning a ship of any unexpected hazard or deficiency known to the wharfinger). This warranty of workmanlike performance, recognized by the Supreme Court in *Ryan,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, was unequivocally eliminated by the 1972 Amendments to the LHWCA. *See Cooper Stevedoring Co. v. Fritz Kopke, Inc.,* 417 U.S. 106, 113 n. 6, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974). Indeed, the

*Oglebay* court specifically noted that while the *Ryan* doctrine is still viable for suits brought under the Jones Act, it is no longer permissible under the LHWCA. *Oglebay,* 788 F.2d at 365, n. 5.

*Western Tankers,* another Jones Act case, did involve a "safe berth" clause. 387 F.Supp. at 491. However, the court awarded indemnification because it found that the safe berth clause best resembled a warranty of unseaworthiness. *Id.* Again, while this warranty provides a basis for indemnification under the Jones Act, Congress specifically eliminated this right to recovery under the LHWCA. *See* S.Rep. No. 92–1125, at 10 (1972).

**6.** Gilmore and Black note that most "safe berth" cases have involved the question "whether the shipowner or the master was at

Amberley has not alleged that Honeywell failed to provide it with a safe berth, meeting the specifications in the contract. It has instead alleged that the berth is not safe because Honeywell's employees were negligently trained. In the absence of an express indemnity provision in the contract, this court will not imply such a right from the charter party agreement between these parties. The language simply does not support a conclusion that the safe berth warranty was meant to extend to personal injuries occurring on the dock. Moreover, recognizing any such implied warranty would defeat the purpose behind the enactment of section 905(b).

## C. Negligence

Even if the contract did provide some basis for an indemnity action, Honeywell argues that Amberley would still be barred from bringing such a suit by 33 U.S.C. § 905(b). Under the LHWCA, as discussed above, a vessel owner cannot obtain indemnity for amounts paid to an injured longshoreman in settlement of the longshoreman's negligence action against the vessel from any employer who has paid the worker's compensation benefits for the injuries sustained.

■ As Amberley correctly notes, when an employer acts in a "dual capacity" as vessel owner, the entity retains its immunity for acts taken in its capacity as employer but can be sued for acts of vessel negligence. *Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 533, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983); *see also, Gravatt v. City of New York*, 226 F.3d 108, 112 (2d. Cir.2000) ("dual-capacity employer-vessel is liable to its covered employees

under section 905(b) . . . to the extent that it breached its duties of care in its capacity as vessel"). Thus the ultimate issue is whether Amberley is suing Honeywell *qua employer* or *qua vessel.*

In this case, Honeywell functions both as Heretick's employer and as a vessel because it was a charterer of the M/V ZENOVIA. Honeywell argues that its status as employer precludes it from being sued in its capacity as a vessel. This argument is completely contrary to case law. A better argument, however, is that Honeywell is immune from suit because Amberley's claim is based on actions taken by Honeywell *qua employer.*

■ Amberley argues that it is suing Honeywell in its capacity as vessel owner and thus should be allowed to proceed. Amberley asserts that the indemnification claim is based upon the safe berth clause of the contract, which was entered into by Honeywell the vessel/charterer. As a result, it is suing Honeywell the vessel. Nowhere, however, does Amberley allege any facts that could possibly amount to Honeywell's negligence in operating the vessel. In the third-party complaint, Amberley asserts only that Honeywell was negligent in training its line handlers and other employees *on the dock.* Specifically, Amberley argues that Honeywell failed to properly train equipment operators, like Heretick, in handling mooring lines, and that this failure created an unsafe berth for the docking ships. These allegations clearly refer to actions taken by Honeywell the employer, not Honeywell the charterer. Thus, since Amberley has alleged that Honeywell was negligent only in its role as the plaintiff's employer, not

fault for not going into the designated port or berth—or the connected question . . . of the proper allocation of extra expenses consequent on the owner's or the master's refusal to send the ship to the designated port or

berth. It is clear on the face of it that, if the port or berth is unsafe, the master is excused from taking his ship in, and the charterer must bear the extra expense. . . ." *The Law of Admiralty* at 204.

in its role as vessel operator, the LHWCA prohibits Honeywell from being held liable.

### III. Conclusion

For the reasons set forth above, the court **GRANTS** Honeywell's Motion to Dismiss. The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**